The State of Florida vs. William H. Gleason.

THE STATE OF FLORIDA, UPON THE RELATION OF THE ATTORNEY-GEN-
ERAL OF SAID STATE, WHO PROSECUTES IN THE NAME AND BY THE AU-
THORITY OF SAID STATE, vs. WILLIAM H. GLEASON, LIEUTENANT-
GOVERNOR OF SAID STATE.

1. The fifth section of the 6th article of the Constitution of this State
provides that " the Supreme Court shall have appellate jurisdiction in all
cases in equity, also in all cases of law in which is involved the title to,
or right of possession of real estate, or the legality of any tax, impost, as-
sessment, toll, or municipal fine, or in which the demand or the value of
the property in controversy exceeds three hundred dollars; also in all
other cases not included in the general subdivisions of law and equity;
also in all questions of law alone; in all criminal cases in which the
offense charged amounts to felony. The court shall have power to issue
writs of *mandamus, certiorari*, prohibition, *quo warranto, habeas corpus*; and
also all writs necessary or proper to the complete exercise of its appellate
jurisdiction." Held, that the jurisdiction of this court is two-fold—appel-
late jurisdiction proper, with power to issue all writs necessary to its full
exercise, and original jurisdiction to issue the writs specified where they
are the appropriate remedies.

2. A grant of power to issue a writ of *quo warranto* embraces and in-
cludes the proceeding by information in the nature of a *quo warranto*,
this proceeding being civil in its essential incidents, and having in view the
same object.

3. A constitutional grant of power to issue a writ of *quo warranto*, can
be exercised by this court without legislative action prescribing the mode
and manner of its exercise, and the court will discharge its duty by a course
conformable to the principles of the common law, in the absence of legis-
lation upon the subject.

4. A plea to an information, in the nature of a *quo warranto*, should set
out the defendant's title at length; it should be responsive to the informa-
tion. The defendant must justify or disclaim, and not guilty, or *non usur-
pavit*, are not good pleas. All the facts necessary to constitute a good
title must be set up. In default of such a plea judgment by default goes
for the State.

5. The Attorney-General is the proper officer to file an information, in
the nature of a *quo warranto*, against a person holding a public office, to
inquire into his title to the same. It is a power incident to his office.
Upon the filing of the information the writ issues upon his demand, as in

The State of Florida vs. William H. Gleason.

ordinary actions of debt by the State against its debtors, and in a case of this character the court cannot inquire into his motives, or the motives of a third person alleged to influence his action.

6. The Legislature of this State has no authority to hear and determine a case involving the right and title to the office of Lieutenant-Governor of this State. This is a power distinct from the right of the Senate to try an officer for crime upon articles of impeachment preferred by the Assembly. It is judicial in its character, and a matter solely within judicial cognizance. Nor is it a political question beyond the power of the courts to determine.

7. The right to an office will not be inquired into collaterally; the only method known to the law of trying the legal title to an office is by a direct proceeding for that purpose.

8. An officer *de facto* is one exercising the duties of an office under color of election or appointment, and his acts are as valid and binding upon the public, or upon third persons, as those of an officer *de jure*.

9. In a State where equal rights are guaranteed to all by fundamental law, the act of Congress entitled " An Act to protect all persons in their civil rights and furnish the means of their vindication," is inoperative to permit a party, after a full and fair hearing, to question the correctness of judicial decisions affecting his rights, and by his own act transferring the cause; such a doctrine would destroy all power of State courts, and it is the duty of the State court to set aside the petition, and proceed to hear and determine the case according to the principles of law.

10. A prosecution instituted in the name and in behalf of the people of the State of Florida, is a substantial compliance with the constitutional requirement in section 2, article VI., viz.: " The style of all process shall be ' The State of Florida,' and all prosecutions shall be conducted in the name and by the authority of the same." It is sufficient, if it appear from the record that it is conducted by the authority of the State of Florida as distinct from the authority of any other power.

11. The proceeding by information, in the nature of a *quo warranto*, is essentially a civil proceeding, and the pleadings in it are as much subject to amendment as they are in ordinary civil actions. It is criminal only in form.

12. The Constitution, until changed in some recognized legal mode, is as well a limit upon the power of the people as upon the departments of the government. The simple election by the people of a person to an office who has not the constitutional requisites for eligibility does not destroy the effect of the constitutional requirements. The fact that the party

is eligible at the time the *case is tried* cannot modify the principle. He must have been so when elected. Nor is it necessary that there shall be a party contesting the office before this court can act. It acts upon the motion of the Attorney-General.

13. The terms "registered voter," in section 22, article XVI., of the Constitution of the State, refer to the registration authorized by the 6th section, article XIV., of the Constitution. It did not become operative as a requirement for eligibility to office before the Legislature had passed a registration law, and the constitutional requirement could be complied with.

14. The office of Lieutenant-Governor of this State being an office created by the Convention which framed the Constitution of this State, it is not controlled in such manner by the legislation of Congress authorizing the holding of such Convention, as makes the constitutional requisites for eligibility inoperative. Officers elected at the first election to fill the offices provided by the Constitution must be eligible according to its requirements.

*A. R. Meek*, Attorney-General, *J. P. Sanderson*, *M. D. Papy*, and *A. J. Peeler*, for the State.

*D. S. Walker* and *Horatio Bisbee, Jr.*, for Respondent.

Almon R. Meek, Attorney-General of the State of Florida, on the 19th day of November, A. D. 1868, during a term of the Supreme Court of said State, appeared and made his certain motion in said court, in the words and figures following, to wit:

EX PARTE STATE OF FLORIDA, EX REL. ALMON R. MEEK, ATTORNEY—GENERAL OF THE STATE OF FLORIDA.

And now the said Attorney-General moves the court for leave to file an information in the nature of a *quo warranto* against William H. Gleason, exercising the functions, &c., of Lieutenant-Governor of the said State, and for due process according to the prayer of said information.

ALMON R. MEEK, Attorney-General.

The State of Florida vs. William H. Gleason.

Leave being granted, he thereupon filed an information, in the nature of a *quo warranto*, against William H. Gleason, in the words and figures following, to wit:

IN THE SUPREME COURT OF THE STATE OF FLORIDA.

Almon R. Meek, Attorney-General of the people of the State of Florida, who sues for the said people in this behalf, comes here before the Justices of the people of the State of Florida of the Supreme Court of the same people, on the nineteenth day of November, A. D. 1868, at an extra and special term thereof, and for the said people gives the said court here to understand and be informed that William H. Gleason, to wit, in said State, for the space of five months, now last past, and upwards, has used, enjoyed, exercised, and performed, and still does use, enjoy, exercise, and perform without warrant or authority, in violation of the existing Constitution of said State, the franchise, functions, and powers of the office of Lieutenant-Governor of the people of the State of Florida aforesaid, and has actually presided over the deliberations of the Senate of said State, and also done other acts which are authorized and required to be done and performed by the Lieutenant-Governor of the people of said State, and which he alone has a right to do, which said office and the franchises and functions and powers thereof, the said William H. Gleason, during all the time aforesaid, usurped, and still does usurp upon the people aforesaid, to their great damage and prejudice.

And the said Attorney-General of the said people, who prosecutes as aforesaid, further gives the court to understand and be informed that the said William H. Gleason for the space of five months, now last past, and upwards, has used, and still does use and exercise and enjoy the office and franchise of Lieutenant-Governor of the people of the State of Florida, in violation of the existing Constitution of said State, for that by the fourteenth section of the fifth article of said Constitution it is ordained and required that the Lieutenant-Governor shall be elected at the

same time and place, and in the same manner, as the Governor, and that his term of office and eligibility shall also be the same as the Governor, and by the third section of said fifth article of said Constitution it is ordained and required, that no person shall be eligible to the office of Governor who is not a qualified elector, and who has not been nine years a citizen of the United States, and three years a citizen of the State of Florida, next preceding the time of his election; and for that, by said sections and provisions of said Constitution, no person is eligible to the office of Lieutenant-Governor who has not been nine years a citizen of the United States, and three years a citizen of the State of Florida, next preceding the time of his election; and for that, heretofore, to wit, the said William H. Gleason, on the first Monday, Tuesday, and Wednesday of May, in the year of our Lord one thousand eight hundred and sixty-eight, was elected to the office of Lieutenant-Governor of the people aforesaid; and afterwards, to wit, on the seventh day of July, in the same year, to wit, at Tallahassee, in said State, then and there did take the oath prescribed by the Constitution of said State to be taken by each officer in said State, as a Lieutenant-Governor thereof; he, the said William H. Gleason, then and there being ineligible, under the said provisions of the said Constitution of said State, to the said office of Lieutenant-Governor, for that the said William H. Gleason had not then and there been a citizen of the State of Florida for the full period of three years then next preceding said election, so, as aforesaid, held on the said several days in May aforesaid, as in and by the provisions of said Constitution required; and so the Attorney-General aforesaid does give the court here to understand and be informed that the said William H. Gleason, during all the time aforesaid, has usurped, and still does usurp, upon the people aforesaid, the said franchise, functions, and powers of the said office of Lieutenant-Governor of the people aforesaid, to their great damage and prejudice.

Whereupon the said Attorney-General prays the advice of this court in the premises, and due process of law against the

The State of Florida vs. William H. Gleason.

said William H. Gleason in this behalf to be made, to answer to the said people by what warrant or authority he claims to use, enjoy, exercise, and perform the franchise, functions, and powers aforesaid.                    ALMON R. MEEK,
Attorney-General of the State of Florida.

Whereupon an order in the premises was made by the court, in the words and figures following, to wit:

IN THE SUPREME COURT, STATE OF FLORIDA.

IN THE MATTER OF INFORMATION BY THE ATTORNEY-GENERAL, vs. WILLIAM H. GLEASON.

The Attorney-General having moved the court for leave to file an information, in the nature of a *quo warranto*, against William H. Gleason, Lieutenant-Governor of the State of Florida, it is ordered that leave be, and is hereby, granted to said Attorney-General to file said information, and on further motion in this behalf it is also ordered that a rule be, and is hereby, granted against the said William H. Gleason requiring him to show cause before this court on Tuesday morning next, at ten o'clock, A. M., why the said writ of *quo warranto* prayed for in said information should not issue, and that a copy of this order and of the information aforesaid, duly certified by the clerk, be served on said William H. Gleason, and that the service of said copy of said order and of said information on said William H. Gleason, shall be sufficient service of the rule aforesaid.

Upon which said original order is endorsed the following, to wit:

Executed by serving a certified copy of this order and of the information upon William H. Gleason, this 19th day of November, A. D. 1868.                    C. J. PORTER,
Deputy Sheriff Supreme Court Florida.

And afterwards, to wit, on the twenty-fourth day of November, in the year of our Lord one thousand eight hundred and

sixty-eight, came William H. Gleason by his attorneys, H. Bisbee and David S. Walker, and upon motion of respondent's attorneys, the rule aforesaid was enlarged and further time given to answer the same until eleven o'clock, A. M., the twenty-fifth day of November, in the year of our Lord one thousand eight hundred and sixty-eight, at which time, upon further motion of respondent's attorneys, the rule was enlarged and further time given to answer the rule aforesaid until four o'clock, P. M., of the same day, at which time the rule was again enlarged, upon motion of respondent's attorneys, until the following day, the twenty-sixth of November, at ten o'clock, A. M., at which time the respondent, by his attorneys, filed his answer in the words and figures following, to wit:

### SUPREME COURT, STATE OF FLORIDA.

In answer to the writ issued out of this court, commanding William H. Gleason to show cause why a writ of *quo warranto* should not be issued against him, the said William H. Gleason specially appears and says that he ought not to be made to show by what warrant or authority he claims and enjoys, exercises, and performs the franchise, functions, and powers of Lieutenant-Governor of the State of Florida, by reason of anything contained in the paper purporting to be an information on file in this case:

*First.* Because the said court has no power or jurisdiction to issue, or cause to be issued, a rule to show cause why a writ of *quo warranto* should not issue against the said William H. Gleason.

*Second.* Because the said court has no original jurisdiction to grant leave to file an information in the nature of a *quo warranto.*

*Third.* Because the said court has no original jurisdiction under the Constitution and laws of this State to issue a writ of *quo warranto*, or to try and determine proceedings thereon.

*Fourth.* Because the power given to said court, if given as

The State of Florida vs. William H. Gleason.

all by the Constitution of this State, to issue writs of *quo warranto*, cannot be exercised save as auxiliary to the exercise of its appellate jurisdiction, until the Legislature shall have prescribed the mode and manner and cases in which it shall be exercised.

*Fifth.* Because the said Almon R. Meek, represented in the said rule of this court to show cause as being the Attorney-General of the State of Florida, is not the Attorney-General of said State, nor are the said proceedings instituted or prosecuted by the Attorney-General of said State; and because the said Almon R. Meek, claiming to exercise the functions and authority of Attorney-General, was appointed by Harrison Reed, Governor of the said State, after he had been impeached by the Assembly of said State, and before his acquittal by the Senate, and was therefore, by the Constitution of said State, under arrest, and disqualified from performing any of the duties of his office.

*Sixth.* Because at the time of the institution of the proceedings in this case, and at present, F. A. Dockray was, and is, the legal Attorney-General of the State of Florida, he having been appointed to that office by the Lieutenant and acting Governor of the State, William H. Gleason, after the impeachment of the said Harrison Reed, and before his acquittal by the Senate, upon whom, and at that time and before, had devolved by the Constitution of the State all the powers and duties of government.

*Seventh.* Because the motion for leave to file the said paper, purporting to be an information, is not founded upon any affidavit.

*Eighth.* Because if the said court has jurisdiction over informations in the nature of a *quo warranto*, or over writs of *quo warranto*, it ought not, in the exercise of its absolute discretion with which it is vested, to grant the writ in this case, for the reason of public policy and the public interest do not demand or require the issuing of the said writ, but on the contrary require that it shall be denied.

*Ninth.* Because Harrison Reed, since his impeachment as

aforesaid, has caused the said motion to be made and the proceedings to be instituted from malicious and vindictive motives; and to gratify a spirit of revenge and recrimination against the said Gleason.

*Tenth.* Because Harrison Reed, at the time when the said William H. Gleason was elected, knew by information or otherwise how long the said Gleason had been a citizen of this State, and because the said Harrison Reed, at the time the said Gleason was nominated for his said office, knew of his own knowledge or otherwise how long the said Gleason had been a citizen of this State, and because with the said knowledge the said Harrison Reed urged and solicited the nomination of the said Gleason to the office of Lieutenant-Governor, and advocated his election during his election canvass, and voted for his election himself, and has full knowledge of all the facts he has caused to be set forth in the said paper, purporting to be an information, as the ground for asking the said court to issue the said writ.

*Eleventh.* Because the said proceeding is recriminatory against the said William H. Gleason, and grew out of the late impeachment of Harrison Reed by the Assembly of the State of Florida, the said Harrison Reed charging the said Gleason with having caused and influenced his impeachment as aforesaid.

*Twelfth.* Because the Constitution has given the power to the Assembly to impeach the Lieutenant-Governor, and the Senate to try and remove from office, and that the said bodies will soon be in session and exercise the power if deemed necessary.

*Thirteenth.* Because it would be an improper use of the powers of this court, if it had such power, to grant the said writ for the purposes and motives that have originated this proceeding, and appearing herein.

And for reasons above set forth, and divers other reasons, the said William H. Gleason moves that the said rule to show cause why a writ of *quo warranto* should not issue against him as Lieutenant-Governor be discharged, and the proceedings instituted in this case be quashed.  W. H. GLEASON.

Subscribed and sworn to before me this 24th day of November, A. D. 1868.          S. CONANT, Justice of the Peace.

The first four answers upon which the motion to discharge the rule is based, raising the question of jurisdiction, were first considered, to determine whether the court would proceed with the cause.

After argument of counsel,

WESTCOTT, J., delivered the opinion of the Court.

This is an application for this court to exercise original jurisdiction in the case at bar, which is an information in the nature of a *quo warranto* instituted in behalf of the State of Florida by Almon R. Meek, its Attorney-General.

Under the first four points of the answer to the rule, the following questions arise:

Has this court original jurisdiction to issue a writ of *quo warranto*? If so, do proceedings under an information in the nature of a *quo warranto* come within the constitutional grant of power to issue a writ of *quo warranto*, and is it necessary for the Legislature to prescribe the mode and manner of proceeding before the court can exercise the power granted in the Constitution?

Upon an examination of the Constitutions of the several States (as well as that of the United States) it will be found, that in some constitutions the powers granted to the Supreme Court are threefold:

First. Appellate powers.

Second. Original powers, embracing the power to issue writs of mandamus, *quo warranto*, prohibition, and *habeas corpus*, addressed to persons, or to courts.

Third. The grant of power to exercise a superintending control over courts of inferior jurisdiction, by means of writs of *certiorari*, prohibition, mandamus, and other writs applicable to this purpose.

The State of Florida vs. William H. Gleason.

In other States, it will be found that the powers given are two-fold :

First. Appellate powers strictly.

Second. Power to exercise a superintending control over inferior jurisdictions by appropriate writs, and power to issue writs of *habeas corpus*.

A careful examination will show that the Supreme Courts of the States are, as a general thing, clothed with powers in addition to those which are *appellate in their character.*

Thus, in New Hampshire, the Supreme Court, like the Court of King's Bench, its great prototype, has *exclusive* jurisdiction to issue writs of *quo warranto*, mandamus and prohibition ; a jurisdiction of this character being not only " very high and transcendent," but in its results, important, keeping all inferior jurisdictions within their limits, superintending all corporations, commanding magistrates to do their duty, and protecting the offices of the State, and its franchises, from usurpation. They are high prerogative writs.

The Supreme Courts of Massachusetts, Minnesota, Connecticut, Arkansas, Missouri, Maine, California, Michigan, New Hampshire, and of other States, not necessary to mention, have original powers; so has the Supreme Court of the United States. It is true that the original power exists to a very limited extent in many, but it is there nevertheless.

The powers granted to the Supreme Court of this State are found in Sec. 5, Art. VI., of the Constitution, which is as follows : "The Supreme Court shall have appellate jurisdiction in all cases in equity, also in all cases of law in which is involved the title to or right of possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand or value of the property in controversy exceeds three hundred dollars; also in all other civil cases not included in the general subdivisions of law and equity ; also in all questions of law alone, in all criminal cases in which the offense charged amounts to felony. The court shall have power to is-

sue writs of mandamus, *certiorari*, prohibition, *quo warranto*, *habeas corpus*, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction. Each of the justices shall have the power to issue writs of *habeas corpus* to any part of the State upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the Supreme Court, or before any Circuit Court in the State, or before any judge of said courts."

It will be noted that the second clause is as follows:

"The court shall have power to issue writs of mandamus, *certiorari*, prohibition, *quo warranto*, *habeas corpus*, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction."

The question here is, Does this clause grant the power to this court to issue the enumerated writs, otherwise than in aid of its appellate jurisdiction and as an original power?

Two positions are taken in argument in reference to the grant of powers to the Supreme Court.

It is assumed, that that portion of the Constitution preceding the clause which we are here to construe, vests a jurisdiction which is strictly appellate in its character, and, excluding the exceptions enumerated, so extensive in its scope that the "human mind can conceive of no case in which the court has not appellate jurisdiction."

This is without doubt a correct construction, and it follows from it also, that the court would, without any additional or subsequent clause in the Constitution, possess all the powers necessary to its complete exercise, upon the admitted and ever active principle applicable to the construction of constitutional grants of power—that the incidental power follows the grant of the principal power. A grant of the principal power of appellate jurisdiction embraces, *ex necessitate*, the powers appropriately adjunct thereto; without them the principal grant would be inoperative, and substance become but shadow.

The second position assumed in argument is, that the next

grant of power contained in the words "the court shall have power to issue writs of mandamus, *certiorari*, prohibition, *quo warranto, habeas corpus*," is qualified by the words "necessary or proper to the complete exercise of its appellate jurisdiction," in the subsequent portion of the sentence.

The precise extent to which it was qualified was not developed; but looking to authority to determine it, the conclusion is irresistible, that with this construction this court has nothing granted in this entire sentence, purporting to grant additional powers, which did not follow from the extensive grant contained in the preceding portion of the section.

If the words "necessary or proper to the exercise of its appellate jurisdiction" are held to qualify, to the extent claimed, the power to issue the preceding enumerated writs, the result is twofold :

First. That this court has nothing except appellate jurisdiction, and it can issue no writs, whatever may be their character (except *habeas corpus*), that are not necessary or proper to a complete exercise of appellate jurisdiction.

Second. That power "to issue writs of mandamus, *quo warranto, habeas corpus*, and such other remedial and original writs as are necessary to give this court a general superintendence and control of all inferior courts," is not vested in this court.

As to the second position stated, it is taken upon the assumption that Justice Thompson, one of the ablest judicial minds this State has produced, was correct in his view in the case of *ex parte* White, 4th Florida, 165, to the effect "that power to issue writs of injunction, mandamus, *quo warranto, habeas corpus*, and such other remedial and original writs as may be necessary to give this court a general superintendence of all other courts, is a power not necessarily included in the grant of appellate jurisdiction."

This conclusion of Justice Thompson is somewhat shaken, if not entirely overthrown, by the decisions in the Supreme Court of the United States.

The powers granted to the Supreme Court of the United States by the Constitution of the United States are original as to cases affecting ambassadors, &c., but in all other cases the Supreme Court *has appellate jurisdiction.*

Under this grant, and by virtue of acts of Congress regulating it, which as a matter of course could only be operative within the Constitution, the Supreme Court of the United States in U. S. vs. Richard, Peters District Judge, granted a writ of prohibition to restrain an inferior court.   3 Dall. 121.

In *ex parte* Bradstreet, 7 Peters, 648, a writ of mandamus to the Judge of the District Court of the United States, Northern District of New York, was granted.

A *habeas corpus* and *certiorari* was granted in *ex parte* Burford, 3 C., 448.

While we concur with Justice Thompson in the conclusion to which he arrived in *ex parte* White, we do not agree with him as to this doctrine, one of the premises upon which his conclusion was based.

The conclusion from these cases in the Supreme Court of the United States is, that when the object and effect of an application to the Supreme Court of the United States is to bring under review the decisions of an inferior court, or to direct its action, or control or annul its excesses, the appellate jurisdiction given by the Constitution attaches, and that the court may exercise that appellate jurisdiction, in some cases by means of the writ of *habeas corpus,* and in others by the writs of mandamus, *certiorari* and prohibition.

It makes no difference, however, which is the correct rule, for looking at our Constitution in the light of the doctrine enunciated in *ex parte* White, or in the contrary view held as to the extent of powers resulting from a simple grant of appellate jurisdiction by the Supreme Court of the United States, there is one result which attends both.

If the doctrine in *ex parte* White—that the power to issue these writs to control inferior courts does not attach to a gen-

eral appellate jurisdiction—be correct, then the subsequent clause, which restricts the power to issue them to these purposes according to the construction contended for, operates to qualify the previous clause to such an extent as to destroy it, and to render the principal and leading portion of the sentence, the one that in very words purports to grant a power, entirely nugatory, by a clause subsequently qualifying it. So also, if the powers incident to the simple grant of appellate jurisdiction are correctly stated by the Supreme Court of the United States, it is evident that the entire clause was unnecessary, for it conferred nothing which it did not have before.

In either view, it will thus be seen that these conclusions are inconsistent with the rule that when several grants of power are made in an instrument, they should be so construed as to make them each operative to accomplish the usual purposes to which they are applicable.

There is again a manifest difference between the *effect* which the clause construed by Justice Thompson had by his construction, and that which would follow the construction of this entire clause as contended for by respondent here.

Whatever may be said of the construction which Justice Thompson gave to the clause in the old Constitution in other respects, it yet made it operative to confer an *additional power*. According to his view it vested a jurisdiction not granted in the preceding clauses. He did not make it surplusage, or unnecessary. If, admitting the operation of the last clause of this sentence to be as contended for by respondent, it resulted to vest another and different power, then the effect given to the entire and parallel clause of the old Constitution would be carried out; but when this is not so, but a construction is given which vests no additional power, we depart from the path he followed. We should recollect in giving a construction to constitutional grants that it is not their aim to provide the mode and method by which powers are to be exercised.

Any construction of a sentence, even in an instrument of much

less importance than a Constitution, which makes one portion of it so qualify another that it destroys its effect, or makes it surplusage when used in connection with the other portion of the instrument, or such a construction of a clause in a State Constitution purporting to give power as permits it to give no other than existed before, is not usually correct. Such a construction should not be given unless the language is capable of no other intelligent meaning.

Permitting this rule to operate here, we are satisfied that no impartial mind can give to this entire sentence, proposing to grant a distinct power, such an interpretation as does not do so. If such is the case, the power to issue the specified writs must be original. Such a construction is entirely consonant with the general purposes of the creation of a Supreme Court; that is, that it should have some other power than that which is strictly appellate. This is true of the Supreme Court of the United States, and it is true in reference to the Supreme Judicial Tribunals of most of the States.

In the old Constitution this could not operate, because the court by its terms was expressly restricted to *appellate jurisdiction only*, except in those cases otherwise provided. Here we have no analogous clause. If there was, we would require a most positive grant of original power before we should admit it. General terms such as this, preceding the body of the grant, should have a general effect to control and limit the subsequent portions of it; and this should be the case even though some portions of it are rendered inoperative, unless the intention to modify the original limitation is clearly expressed. This we conceive is the only justification for such a construction being given to the old Constitution as restricted its power to issue a writ of *quo warranto* to a case where it must be used to control or supervise a subordinate court, a case which any one at all familiar with the nature of the proceeding, and the end it accomplishes, knows can never arise.

This proceeding cannot control or supervise. To control,

means to direct without destroying; to supervise, to some extent involves the same idea. A writ of *quo warranto* affirms an existing right to an office, or it destroys and sets aside the pretended claim of an usurper; it controls him in the exercise of the office in no legitimate sense, and it does not supervise its exercise, but destroys the power to act, by denying the right to hold the office and pronouncing judgment of ouster.

If the same power and none other was intended to be granted in the new Constitution, why was there so marked a difference between the language employed in the two? The framers of the new Constitution had but to adopt the language of the first, which had received judicial construction, to secure the same result; that they adopted different language shows that they intended to make a change in the power.

These specified writs are the very " armor of sovereignty ; they are designed for the very purpose of protecting the sovereignty from invasion or intrusion;" the office of one, the " writ of *quo warranto*," is to check the course of usurpers, and to remove those from positions "who assume without legal right its name, or seize upon its franchise." The purposes for which the specified writs in this clause are applicable, should to some extent control us in our interpretation of it. ·

A mandamus is a writ addressed as well to corporations and officers as to courts. The writ of *quo warranto* is addressed to officers either of the State or of a corporation. In so far as the mandamus controls courts it can be used as auxiliary to appellate jurisdiction; in other cases it is not so. Marbury vs. Madison, 1st Cr., 165.

If there was a doubt, the rules of construction would require full operation to be given to these writs to accomplish the natural ends to which they are adapted.

Much stress has been laid upon the use of the conjunction " and " in this sentence, preceded as it is by a comma.

To say that because a copulative conjunction and a comma intervene between two clauses of a complete sentence vesting

The State of Florida vs. William H. Gleason.

powers in a court, that what follows necessarily restricts the application of what precedes, as an abstract proposition is no more a necessary result than the reverse of the proposition, to wit: that what precedes necessarily restricts what follows. The true rule is, that the concluding clause or preceding clause may restrict, limit, or enlarge as the language requires, and as the nature of the subject matter demands. When "we interpret a Constitution, what we are to seek is, the thought which it expresses. To do this, the first resort in all cases is to the natural signification of the words employed, in the order of arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that 'meaning apparent in the face of the instrument is the one which we alone are at liberty to say was intended to be conveyed."

It is contended that this court can use these writs only in aid of its appellate jurisdiction. Is this the natural import of the words?

The sentence is, "the court shall have power to issue writs of mandamus, *certiorari*, prohibition, *quo warranto, habeas corpus*, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction." The word "*also*," here used, signifies "in like manner, further, likewise;" and its effect is not to limit, or to restrict, but to enlarge; the sentence is the same as if it was "the court shall have power to issue" the specified writs, and shall have power "to issue all writs," &c. Why use the words "and also," if something in addition to what had gone before was not to follow, and the words "all writs," if some of the same character preceded? And why restrict the grant of power to issue all writs to those necessary for *its* "*appellate* jurisdiction," if it had none other than appellate jurisdiction? Why, in a subsequent clause, point out the mode of exercising the previous grant to issue the writ of *habeas corpus*, and confer express original jurisdiction, if the tribunal was to be

appellate only?   It should be construed to grant a new power,. as well as to give full effect to the specified writs.   The whole clause should be construed in accordance with the manifest purpose of the grant of power to issue the writ of *habeas corpus,* which the subsequent portion providing the machinery for its exercise makes clear was to be an original power.

Our conclusion is, that the jurisdiction of this court is twofold : appellate jurisdiction proper, with power to issue all writs necessary to its full exercise, and original jurisdiction to issue the specified writs when they are the appropriate remedies.

Having disposed of this point, the next question to be considered is, Does the proceeding here, to wit : an information in the nature of a *quo warranto,* come within the constitutional grant of power to issue a writ of *quo warranto?*

It will be found by reference to the American cases, that the constitutional grant of power in other States where the proceeding has been by information, is precisely similar to the grant here.

An examination will show that in the American practice, the terms " *quo warranto,*" and " information " in the nature of a *quo warranto,* are used as synonymous and convertible terms, the object and end of each being substantially the same.   Speaking of an information of this character where the constitutional grant of power was the same as in our Constitution, the Supreme Court of Missouri say : " This court conceives that jurisdiction is given of this case by the power to issue writs of ' *quo warranto.*' "   State vs. Merry, 3d Mo., 198 ; 8th Mo., 331.

In Wisconsin, the Supreme Court hold to the same view, remarking that the information has in view the same object.   1st Wisconsin, 333.

This upon examination will be found to be the American doctrine, and in England such a thing as a distinct proceeding by the ancient writ of *quo warranto* has not been practiced for centuries.

Is it necessary for the Legislature to prescribe the mode of

The State of Florida vs. William H. Gleason.

proceeding, before the court can exercise the general power granted by the Constitution?—is the next point raised, which reaches to the jurisdiction of the court.

Chief-Justice Marshall, in speaking of implied and resulting powers from a general grant of jurisdiction, says : "It has been justly observed that no act of Congress directs grand juries or defines their powers. By what authority, then, are they summoned ? The answer is, that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are therefore given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential. Therefore the power is implied, and is as legitimate as if expressly given." 1st Brock, 159.

The precise point arose in 3d Mo., 198, where it was held, "the Legislature has not prescribed any mode of proceeding in a cause like the present, but in the absence of such regulations this court will proceed to discharge its duties by a course conformable to the common law usage."

Other citations on this point: 3d Dallas, 1.   2d Scam., 335. 2d Story on Con., 585, 1773.   Sedg. Con. Law, 588.

Besides, the act of August 1st, 1868, vests the court with all necessary power.  P. 10, Acts of 1868.

We think there is no necessity for the Legislature to act, to enable this court to exercise its constitutional jurisdiction.   If such was the case, a refusal to act would emasculate the power of the court, and render it unable to perform its constitutional duties and powers.

The court having announced the foregoing opinion, the Attorney-General, on the 27th day of November, A. D. 1868, made and entered his certain motion in the words following, to wit: