JAMES W. RICE & another *vs.* NATIONAL BANK OF THE COMMONWEALTH & others.

Suffolk.    March 18, 1878. — Feb. 26, 1879.    COLT & AMES, JJ., absent.

An information in the nature of a *quo warranto*, under the Gen. Sts. c. 145, §§ 16–24, without the intervention of the attorney general, will not lie against the stockholders of a corporation organized under the St. of 1870, c. 224, if the forms of law in the organization of the corporation have been complied with, and the certificate issued by the secretary of the Commonwealth, as provided by § 11, although the certificate was obtained by fraud.

INFORMATION, in the nature of a *quo warranto*, filed, by order of court and consent of parties, on November 26, 1877, and containing the following allegations:

That on April 3, 1876, all the property which Ezra D. Winslow had on February 14, 1876, was conveyed and assigned to the relators as his assignees in bankruptcy.

That on said February 14 Winslow owned certain property situated in Boston, of the value of $100,000, being the newspapers known as the Boston Post and the Boston Statesman, with the good-will and bills receivable of the same, and all and singular the stock, types, presses and materials used in publishing the same, and the Associated-Press privilege connected therewith; also the types, presses, stock and materials connected with a job-printing office in said Boston, by Winslow conducted in connection with said papers; also the library, fixtures and all other property connected with and belonging to said papers and job office.

That on May 14, 1875, Ezra D. Winslow, Edward F. Porter and William C. Greene falsely and fraudulently assumed to associate and form a corporation under the laws of this Commonwealth, under the name of the Boston Post Company, for the pretended purpose of publishing and printing papers, and job printing, with a pretended capital stock of $300,000; but no such association was ever made in fact, no capital stock was ever paid in to said assumed corporation, and no such corporation was legally formed, though Winslow, Porter and Greene complied with all the forms prescribed by the statutes of this Commonwealth for the organization of corporations, and a certificate of organization was obtained from the secretary of the Common-

wealth, in the form prescribed by the St. of 1870, *c.* 224, § 11, certifying that "E. D. Winslow, Edward F. Porter and W. C. Greene, their associates and successors, are legally organized and established as, and are hereby made, an existing corporation under the name of the Boston Post Company, with the powers, rights and privileges, and subject to the limitations, duties and restrictions which by law appertain thereto."

That Winslow, Greene and Porter did not associate themselves together with the intention to constitute a corporation for the purpose of "the printing and publishing of newspapers and job printing," as in their article of association alleged; but that said association (if any was formed) was for the purpose of enabling Winslow to cheat and defraud the public and such persons as he might be able to induce to purchase stock in said assumed corporation; that said assumed corporation was conceived in fraud, and that said association was not for the real purpose of forming a corporation under the laws of this Commonwealth, but was a fraud and a sham entered into for the real purpose of defrauding such persons as might be induced to become creditors of or stockholders in the same; that any certificate of corporate existence, or grant of corporate powers, which Winslow, Greene and Porter may have obtained, was obtained by fraud, and was of no legal force or validity, and Greene, Winslow and Porter never became a corporation under the laws of the Commonwealth.

That about February 1, 1876, Winslow absconded from the United States, and is now in Europe, a fugitive from justice, and Porter and Greene had long before that time ceased to act or claim to act, or to exercise or claim to exercise any corporate franchise, under the name of the Boston Post Company.

That Greene and Porter were mere nominal parties to said assumed association, having no real interest therein whatever; that Greene was the attorney of Winslow, and whatever part he took in the assumed association was as the attorney of and for the benefit of Winslow; that Porter was not in any way interested in the assumed association, and only acted therein at the request and for the sole benefit of Winslow.

That no stock was ever legally issued in said assumed Boston Post Company, but that said assumed corporation was a fraud

and a sham, and no persons ever became legal stockholders in any legal company under that name; that, up to the time Winslow absconded, he was in the possession of all the property above described, using and treating it as his own; and immediately upon his leaving the United States, and before the appointment of the relators as his assignees, certain corporations and persons named, claiming to be stockholders in said corporation assumed to have been formed by Winslow, Porter and Greene, and to exercise a corporate franchise by them claimed to have been obtained under the laws of the Commonwealth by Winslow, Greene and Porter, took possession of all said property previously held by Winslow, and held and managed the same under the name and style of the Boston Post Company, and assumed to exercise a corporate franchise as said company; that they thus held and managed said property, and refused to deliver the same to the relators, on demand, till the same was sold and the proceeds, amounting to $60,000, placed in the hands of a trustee to be disposed of as should be adjudged upon proper legal proceedings to determine the title thereto; that said parties now claim to own said proceeds in the hands of such trustee, as said corporation under the name of the Boston Post Company, and have commenced legal proceedings to obtain the same, contending that Winslow, Porter and Greene obtained a certificate of organization from the secretary of the Commonwealth, which has the force and effect of a special charter, and is conclusive evidence of their organization and of the existence of said Boston Post Company as a corporation.

That no such corporation as the Boston Post Company was ever legally formed, no capital stock was ever paid in, and neither Winslow, Porter and Greene, nor any persons claiming to be their successors or assigns, ever had any right to exercise a corporate franchise as the Boston Post Company for the purpose of taking property, doing business, prosecuting or defending suits at law or in equity, or any other purpose whatever under the laws of this Commonwealth; that if the defendants are the assignees of stock in said assumed corporation, they took the same from Winslow for such value and under such circumstances as should have put them upon inquiry as to the legal character and status of the assumed company, and are not in law protected in the enjoyment

of said franchise any more than the original parties to said fraudulent association.

The prayer of the information was, that due process of law might issue, commanding the defendants to answer by what warrant they claimed to have the said franchise; that they might be restrained from exercising such franchise; and that the attorney general might be notified of the filing and pendency of the information.

The attorney general, having been notified, did not intervene. The defendants demurred to the information, assigning as cause of demurrer that the allegations of the information were not sufficient in law to entitle the relators to the relief sought. ·

*Ames*, J., sustained the demurrer, and dismissed the information. The relators alleged exceptions.·

*J. H. Benton, Jr.,* for the relators.

*H. D. Hyde, C. H. Drew & M. Storey,* for the defendants.

GRAY, C. J.    At common law, private individuals, without the intervention of the attorney general, cannot, either as of right or by leave of court, file an information in the nature of a *quo warranto. Goddard* v. *Smithett,* 3 Gray, 116.    The statutes give the right to file such an information only to " any person whose private right or interest has been injured or is put in hazard by the exercise by any private corporation, or persons claiming to be a private corporation, of a franchise or privilege not conferred by law;" and provide that, where an information so filed is sustained, if the attorney general has not intervened, no judgment of forfeiture shall be entered, but only judgment that the corporation, or the persons claiming to be a corporation, be perpetually excluded from the franchise or privilege exercised by them and not conferred by law.    Gen. Sts. *c.* 145, §§ 16, 22.

This information seeks to exclude the defendants from exercising the franchise of being a corporation, on the ground that any certificate of corporate existence, or grant of corporate powers, which the persons who undertook to form the corporation obtained, was obtained by fraud.    But it shows that those persons complied with all the forms prescribed by the statutes of the Commonwealth for the organization of corporations, and obtained from the secretary of the Commonwealth a certificate under the seal of the Commonwealth, which by the express terms of the general

statute of 1870, *c.* 224, § 11, "shall have the force and effect of a special charter, and be conclusive evidence of the organization and establishment of such corporation."

It thus appears on the face of the information that the franchise of being a corporation was conferred upon the defendants by law. The defendants having thus once become a legal corporation, their franchise, by the general principles of law, as well as by the provisions of the statute under which the information is filed, could be avoided, annulled, revoked or forfeited only by the Legislature, or at the suit of the Commonwealth or of the attorney general representing the Commonwealth, and not upon the application of private individuals. Gen. Sts. *c.* 68, § 41. *Commonwealth* v. *Union Ins. Co.* 5 Mass. 230. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344, 371. *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 274. *Hastings* v. *Amherst & Belchertown Railroad*, 9 Cush. 596, 599. *Goddard* v. *Smithett*, 3 Gray, 117. As this reason is conclusive, it is unnecessary to consider other objections to the maintenance of the information.

*Exceptions overruled.*