HERMAN HAUPT & others *vs.* JACOB C. ROGERS & others.

Suffolk.    December 17, 1897. — January 5, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Information in the Nature of a Quo Warranto brought by Private Persons in their own Names — Amendment changing an Action at Law into a Bill in Equity.*

If the rights of some of the incorporators named in an act to incorporate an elevated railway company in a city, and of certain persons associated with them, have been violated by the sale or attempt to sell and transfer the charter of the corporation, and by the subsequent election of officers of the corporation, the remedy, if any, is by suit in their own names, and not by information in the nature of a *quo warranto.*

Whether a petition to the court for leave to file an information in the nature of a *quo warranto* falls within the statutes allowing amendments changing an action at law into a bill in equity, *quære.*

PETITION for leave to file an information in the nature of a *quo warranto*. The respondents demurred thereto, assigning as grounds therefor that persons were improperly joined as petitioners having several distinct and separate interests and claims which could not be properly litigated in one proceeding, and that there were no facts set out in the petition which entitled the petitioners, in their own names, to file an information in the nature of a *quo warranto*. *Knowlton*, J. reserved the questions of law raised by the demurrer for the full court. The facts appear in the opinion.

˴ *R. M. Morse & J. Lowell*, (*C. E. Hellier* with them,) for the petitioners.

*N. Matthews, Jr.*, for Joseph H. O'Neil, an intervening petitioner.

*M. Storey & F. E. Snow*, for the respondents.

FIELD, C. J.  We think that it must be regarded as settled in this Commonwealth, that an information in the nature of a *quo warranto* cannot be brought by private persons in their own names, except in cases authorized by statute, and that the only statutory provisions relating in terms to such an information are those contained in Pub. Sts. c. 186, §§ 17–25. This court has no authority to direct the Attorney General to file an information in the nature of a *quo warranto*. He is not an officer of the court, but an officer of the Commonwealth, and in the performance of his official duties he is not subject to the direction of the court. In *Goddard* v. *Smithett*, 3 Gray, 116, the court explain the practice of the Court of King's or Queen's Bench in England in directing the Master of the Crown Office to file an information in the nature of a *quo warranto* on application of a private person. The court there say : "But there being no corresponding office or officer in this Commonwealth, having authority at common law to prosecute in the name and behalf of the public, and at the same time an officer of this court and subject to its orders and directions, no corresponding practice could prevail here." The court also say of such an information, that, "when filed by the Attorney General, it is done at his own discretion, according to his own view of the rights of the government, without leave of court, nor will the court direct or advise him on the subject." The court﹅notice particularly the report of the commissioners

who framed the practice act of 1851, St. 1851, c. 233, §§ 55–64, and the mistake under which they seem to have fallen which accounts for the language now found in the last clause of Pub. Sts. c. 186, § 25. See St. 1852, c. 312, §§ 42–50; Gen. Sts. c. 145, §§ 16–24; Pub. Sts. c. 186, §§ 17–25; and the court also explain the dictum in the opinion in *Commonwealth* v. *Union Ins. Co.* 5 Mass. 230. See *Commonwealth* v. *Athearn*, 3 Mass. 285.

The suit of *Goddard* v. *Smithett* was brought under the practice act of 1852, c. 312, and, although some expressions in the opinion may not be strictly necessary to the decision, they were manifestly carefully considered, and were intended to remove the doubts which had theretofore prevailed in consequence of the English practice and the dictum in *Commonwealth* v. *Union Ins. Co.* There is no precedent in our reports for the court directing the Attorney General to file an information in the nature of a *quo warranto* in any case, or for permitting private persons to file such an information in their own names, except under the provisions of the practice acts of 1851 and of 1852, and the corresponding provisions of the General Statutes and of the Public Statutes.

In *Rice* v. *National Bank of the Commonwealth*, 126 Mass. 300, 303, the court say, "At common law, private individuals, without the intervention of the Attorney General, cannot, either as of right or by leave of court, file an information in the nature of a *quo warranto*." In *Attorney General* v. *Sullivan*, 163 Mass. 446, the court say, " The practice of permitting a private individual to apply to this court for leave to file an information in the nature of a *quo warranto* rests, it seems, in this Commonwealth, upon statute." The recent case of *Attorney General* v. *Drohan*, 169 Mass. 534, was an information in the nature of a *quo warranto* brought by the Attorney General on the relation of certain private persons to try the right of the defendants to be members of the Democratic City Committee of the city of Boston. The case was heard upon an agreed statement of facts, and both parties were anxious to have the principal question determined. The court held that the information must be dismissed, because a member of the Democratic City Committee was not a public officer; but that, if an amendment was allowed, substituting the relators as plaintiffs, a decree might be entered for them. It was

not intended by the court to intimate that, after the allowance of the amendment, the suit would be technically an information in the nature of a *quo warranto*. The case was not within Pub. Sts. c. 186, §§ 17–25, and no application had been made to the court for leave to file the information. Under the decision of *Attorney General* v. *Sullivan*, the information in *Attorney General* v. *Drohan*, in the form in which it was filed, was to be regarded as a civil action at law, and as such it might be amended. St. 1895, c. 489, which regulated the election of political committees, provided in § 17 that "the Supreme Judicial Court and the Superior Court shall have full power at law or in equity to enforce the provisions of this act." The court expressed no opinion in *Attorney General* v. *Drohan* whether the information when amended should be regarded as a special statutory proceeding under the St. of 1895, or as a petition for a writ of mandamus, or as a bill in equity. There are in some of our statutes provisions authorizing this court, or the Superior Court, by appropriate proceedings to enforce the provisions of a particular statute, and it may be that the proceedings sometimes would resemble an information in the nature of a *quo warranto*, but there are no statutory provisions applicable to the present case except Pub. Sts. c. 150, § 3, and Pub. Sts. c. 186, §§ 17–25.

At common law in England, an information in the nature of a *quo warranto* to try the title to an office was confined to public offices, and this is the rule in this Commonwealth. *The King* v. *Ogden*, 10 B. & C. 230. *The Queen* v. *Mousley*, 8 Q. B. 946. *Darley* v. *The Queen*, 12 Cl. & Fin. 520. *The Queen* v. *Auchinleck*, 28 L. R. (Ir.) 404. *Pender* v. *Lushington*, 6 Ch. D. 70. *Pulbrook* v. *Richmond Consolidated Mining Co.* 9 Ch. D. 610. *Attorney General* v. *Simonds*, 111 Mass. 256. *Commonwealth* v. *Allen*, 128 Mass. 308. *Commonwealth* v. *Swasey*, 133 Mass. 538.

*Commonwealth* v. *Dearborn*, 15 Mass. 125, was an information in the nature of a *quo warranto*, filed by the Attorney and Solicitor General in behalf of the Commonwealth, alleging that the defendants had used and exercised the office, liberty, and franchise of managers of a lottery granted by the Legislature to the Proprietors of Kennebeck Bridge. The act granting the lottery was approved February 15, 1816, and is St. 1815, c. 117, and it authorized the proprietors to appoint managers of the lottery.

The act incorporating the proprietors is St. 1795, c. 36. The court say : " The counsel on both sides being present at the following November term in Essex, the question whether the information lay was argued at much length by them ; and it was afterwards determined by the court that the defendants, as managers of a lottery granted to a corporation, and appointed to the trust by the corporation, were not such officers as were liable to the process which had been instituted in this case. They were the private officers or servants of the corporation, and removable by it at pleasure, or at least for good cause. The only effect of a judgment against the defendants upon this information would be their removal from office. But such a judgment would be nugatory, for the corporation might immediately reinstate them. Those against whom such an information lies must claim to exercise some public office or authority. The defendants were accordingly discharged."

In *Lechmere Bank* v. *Boynton*, 11 Cush. 369, there were applications by both parties under St. 1852, c. 312, §§ 42–50, for leave to file informations in the nature of a *quo warranto*, and the real question was which of two sets of persons constituted the legally organized corporation, both plaintiffs and defendants claiming to be the corporation.

There are dicta in some of our cases which suggest that the title to an office in private corporations may be tried by an information in the nature of a *quo warranto*, but there are no decisions to that effect, and in one case at least the dicta seem to have been taken from the concession of counsel. *New England Ins. Co.* v. *Phillips*, 141 Mass. 535.

We are aware that in many of the States of the United States informations in the nature of a *quo warranto* are used to try the title to offices in private corporations, and that the courts in such States, on application, authorize private persons to use the name of the Attorney General for that purpose ; and in one or two instances the courts have authorized private persons to bring such informations in their own names. Such proceedings generally have been brought under statutes authorizing them, although in a few States it has been held that they may be brought at common law. *Commonwealth* v. *Arrison*, 15 S. & R. 127. *Hoppin* v. *Buffum*, 9 R. I. 513. *State* v. *Hunton*, 28 Vt. 594.

2 Stimson, Am. St. Law, § 8342. High, Extraordinary Remedies, § 653.

The question then is, whether the petition in the present case states a case within Pub. Sts. c. 186, § 17, and we are of opinion that it does not. The petitioners are some of the incorporators named in St. 1894, c. 548, entitled "An Act to incorporate the Boston Elevated Railway Company, and to promote rapid transit in the city of Boston and vicinity," and two other persons associated with them, and it is alleged that it was agreed, we suppose by and between the incorporators, that the petitioners each should have the right to subscribe for certain shares in the capital stock of the corporation. It is not alleged that any one of the petitioners has actually subscribed for any shares, or that certificates of shares have been issued to anybody. The Boston Elevated Railway Company has not been made a party defendant to the petition, and there is no allegation that the persons who are made the defendants are themselves claiming to be a private corporation, or that they are attempting to exercise any franchise or privilege except as officers of the Boston Elevated Railway Company, using in its behalf the franchise conferred on that company. The petition further alleges, in substance, that after the organization of that corporation under its charter and the election of officers and the adoption of a code of by-laws, certain of its officers, without the knowledge and consent of the petitioners, undertook to sell and transfer the franchise conferred by the act of incorporation, and all the rights arising thereunder, and all the right to subscribe to the capital stock, to certain persons named; that this was in fraud of the rights of the petitioners, and invalid in law; and that after this attempted transfer a new board of directors was chosen without the knowledge and consent of the petitioners, and that the persons so chosen have intruded themselves into the offices of directors of the company, and one of them has intruded himself into the office of president of the company, whereby the private rights and interests of the petitioners have been injured and put in hazard.

If the rights of the petitioners have been violated by the sale or attempt to sell and transfer the charter of the corporation, and by the subsequent election of officers of the corporation, the

remedy, if there is any, undoubtedly should be by a suit in their own names. In general it may be said that, so long as private corporations act within their charter and the laws applicable thereto, and do not violate the general laws, the public is not concerned in their internal management. The shares of stock are private property, and if any shareholders or incorporators have been deprived of any rights which belong to them as shareholders or incorporators, their remedy should be by a private suit. It has been held that mandamus is a proper remedy to restore to his corporate rights a member of a corporation who has been excluded therefrom. *Crocker* v. *Old South Society*, 106 Mass. 489. Mandamus also has been used at the instance of the corporation to compel persons who have been illegally elected, and who claim to be the officers of a corporation, to deliver up all the books and papers of the corporation to persons who are declared in the suit to be the duly elected officers of the corporation. *American Railway-Frog Co.* v. *Haven*, 101 Mass. 398. The cases are numerous where a minority of the stockholders have brought bills in equity against the corporation and the other stockholders, complaining that they have been deprived of their rights as stockholders, and that the corporation, being in the control of the majority, would not afford them a remedy. See *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495. It is manifest that the rights of incorporators or stockholders in a private business corporation ought not to be left to be determined only in a suit by the Attorney General when it is wholly within his discretion whether any such suit shall be brought or not. In England, their rights generally have been determined in equity. The peculiar process provided by Pub. Sts. c. 186, §§ 17–25, is an information in the nature of a *quo warranto* to be brought by leave of court, in which the Attorney General may appear and control the proceedings, and the proceedings relate to the usurpation of a franchise not conferred by law. The proceedings were not intended to be used where a corporation has been duly organized, and is not attempting to exercise any franchise or privilege not conferred by law, but where the alleged grievance is that certain incorporators or stockholders have been deprived of their rights by other incorporators or stockholders in the attempted transfer of the prop-

erty and franchise of the corporation, or in the election of its officers, or in the internal management of the corporation. The railway company, it is true, is a quasi public corporation, but where the rights of the Commonwealth, or of its municipalities, or the performance of the public duties of the company are not concerned, the rights of the incorporators and stockholders *inter sese* are those of incorporators and stockholders in a private business corporation.

The suggestion has been made by the counsel of one of the petitioners, that, if the present petition cannot be maintained, it should be amended into a bill in equity. The objection " that there are no facts set out in said petition which entitle the petitioners, in their own names, to file an information in the nature of a *quo warranto*, as prayed for in said petition," was distinctly taken in the demurrer. The questions of law arising on the demurrer have been reserved for the full court in these terms : " If, upon the facts stated in said petition, the petitioners are entitled to the relief as prayed for, an entry is to be made overruling the demurrer and remitting the case for a hearing upon the questions of fact set out in the petition, with leave to the respondents to make such answer to the petition as they may be advised. If, upon the facts stated in the petition, the petitioners are not entitled to file an information as prayed, then the entry shall be, ' Demurrer sustained and petition dismissed.' " This petition is an application to the court for leave to file an information in the nature of a *quo warranto*, and is not of itself either an action at law or a bill in equity, and there may be some doubt whether it falls within our statutes allowing amendments changing an action at law into a bill in equity. According to the terms of the reservation, the entry must be,

*Petition dismissed.*