Merrimack,
Dec. 6, 1904.

MEEHAN v. BACHELDER.

A private individual cannot file an information in the nature of a *quo war-ranto*, for the purpose of trying the title to a public office.

PETITION, for leave to file an information in the nature of a *quo warranto*. The petition alleges, among other things, that the plaintiff is a citizen of this state; that the defendant is the governor, and in addition to the office of governor, and in disregard of the constitution (*art.* 92) and laws of the state (P. S., *c.* 12, *ss.* 1, 2, 3), holds and enjoys the office of secretary of the state board of agriculture; and that the attorney-general, though requested, has declined to proceed against the defendant to test his right to the office of secretary. The prayer of the petition is that the plaintiff may be permitted, in his capacity as citizen and in the name of the state, to maintain the petition, and that the defendant be made to answer to him or the state by what authority he claims to enjoy the office of secretary.

Upon motion of the defendant, and subject to the plaintiff's exception, the proceeding was dismissed by *Peaslee, J.*, at the April term, 1904, of the superior court, upon the ground that the attorney-general was not a party and upon application had refused to give his indorsement to the proceeding.

*Jeremiah J. Doyle* and *Patrick H. Sullivan*, for the plaintiff.

*Sargent, Remick & Niles*, for the defendant.

BINGHAM, J. This proceeding is a petition by a citizen of the state for leave to file an information in the nature of a *quo warranto*, to test the defendant's right to hold the office of secretary of the state board of agriculture during the term for which he was chosen governor.

At common law, a *quo warranto* information is a proper proceeding to try the title to a public office. *Haupt* v. *Rogers*, 170 Mass. 71, 74; *Attorney-General* v. *Drohan*, 169 Mass. 534. The grounds upon which the defendant's motion to dismiss is based presuppose that the office in question is a public office, and that the defendant might be required to litigate his title to it, provided the attorney-general were a party to the proceeding. It may therefore be assumed, without deciding the question, that the office of secretary of the state board of agriculture is a public office.

As early as 1842 (R. S., *c.* 171, *s.* 3), our statutes provided in express terms that the superior court of judicature should have " exclusive authority to issue writs of error, *certiorari, mandamus,* prohibition, and *quo warranto,* and may issue writs of *habeas corpus* and all other writs and processes to courts of inferior jurisdiction, to corporations and individuals, for the furtherance of justice and the due administration of the laws." Like authority is now conferred upon the court. P. S., *c.* 204, *s.* 2; Laws 1901, *c.* 78, *s.* 2. These statutes left the procedure governing the issuance of process in *quo warranto* proceedings to be determined by the rules of the common law. *State* v. *Gleason,* 12 Fla. 190. The writ of *quo warranto* and the information in the nature of a *quo warranto* are common-law processes. The writ became obsolete in England before our Revolution. *Attorney-General* v. *Sullivan,* 163 Mass. 446, 449; 2 Spell. Ex. Rel., *s.* 1767. It was a civil proceeding and issued out of chancery as of right, in favor of the crown. The information was a criminal proceeding in which, if the issue was found against the defendant, in addition to a judgment of ouster, a fine could be imposed. It is now regarded as a civil remedy, though criminal in form, and is the process that has uniformly been used in this state. *Osgood* v. *Jones,* 60 N. H. 543. As the writ had become obsolete long prior to the enactment of our statutes conferring jurisdiction upon the court (R. S., *c.* 171; P. S., *c.* 204), it is quite probable that what was there meant by the use of the expression "writ of *quo warranto*" was an information in the nature of a *quo warranto.* *State* v. *Railroad,* 58 N. H. 113; *State* v. *Gleason,* 12 Fla. 190; 2 Spell. Ex. Rel., *ss.* 1768, 1770.

The attorney-general, *ex officio,* has the right to bring an information in the nature of a *quo warranto,* to try the title to a public office, and is not compelled to ask leave of the court; but a private individual, in the absence of a statute and without the intervention of the attorney-general, cannot either as of right or by leave of the court file an information to try the title to a public office. *Osgood* v. *Jones,* 60 N. H. 543; *Rice* v. *Bank,* 126 Mass. 300; *Haupt* v. *Rogers,* 170 Mass. 71.

The statutes of 4 and 5 William and Mary, chapter 18 (1692), and 9 Anne, chapter 20 (1710), modifying the common-law practice in England as to filing informations, are not a part of our common law. They were not enacted prior to the emigration, or made specially to apply to the colonies, or adopted here in practice prior to our constitution of 1784. *State* v. *Rollins,* 8 N. H. 550, 560; *Sackett* v. *Sackett,* 8 Pick. 309, 320. In fact, the statute of Anne was limited by its terms to England and Wales, and applied only to municipal offices.

We are aware that in some states a practice prevails similar to

that prescribed by the statute of Anne, but more comprehensive in its scope, allowing the court, on the application of an individual, to grant or withhold leave to file an information in the exercise of a sound judicial discretion (*State* v. *Mead*, 56 Vt. 353; *State* v. *Dahl*, 69 Minn. 108; *State* v. *Elliott*, 13 Utah 200; 2 Spell. Ex. Rel., *s.* 1867), but such a practice has never been adopted here. We have no statute authorizing an individual to file an information to try the title to a state office, or conferring authority upon the court, in the exercise of its discretion, to permit such action to be taken. Proceedings instituted under the provisions of the act of 1893 (*c.* 66) are confined to contests between candidates for county offices, and those authorized by chapter 240, Public Statutes, relate to the enforcement of forfeitures of governmental grants of land and private charters.

In some jurisdictions it is held that the attorney-general, in the performance of his official duties, is not an officer of the court but of the state, and as such officer is clothed with a large discretion, in the exercise of which he is not subject to the orders and direction of the court (*Commonwealth* v. *Fowler*, 10 Mass. 290; *Goddard* v. *Smithett*, 3 Gray 116, 123; *Rice* v. *Bank*, 126 Mass. 300; *Commonwealth* v. *Allen*, 129 Mass. 308; *Attorney-General* v. *Sullivan*, 163 Mass. 446; *Attorney-General* v. *Shomo*, 167 Mass. 424; *Haupt* v. *Rogers*, 170 Mass. 71; *State* v. *Gleason*, 12 Fla. 190; 2 Spell. Ex. Rel., *s.* 1867); while in others the courts—on a petition for a writ of mandamus to compel the attorney-general to institute proceedings to try the title to a public office, he having declined to do so—have exercised the power of reviewing his discretion, and in case of its abuse of requiring him to proceed. *Cain* v. *Benton*, 111 Mich. 657, 660; *Everding* v. *McGinn*, 23 Or. 15; 23 Am. & Eng. Enc. Law (2d ed.) 606, note 1.

The attorney-general is not a party to this proceeding. The plaintiff does not seek to compel him to try the defendant's title to the office of secretary, and it is not alleged that he has abused his authority in declining to adopt the plaintiff's process. It is therefore unnecessary to decide whether the discretion of the attorney-general is absolute, or may be revised by the court upon a proper showing.

*Exception overruled.*

All concurred.