## URIEL H. CROCKER *vs.* OLD SOUTH SOCIETY IN BOSTON.

The exclusion of a member of a corporation from speaking or voting, at four successive meetings of the corporation, without its appearing that his ordinary corporate rights were thus restricted otherwise than in the administration of the internal discipline of the corporation under the by-laws or rules of its own government, is not sufficient cause for a mandamus to the corporation to restore him to a full enjoyment of those rights.

If the tenure of a pew in the meeting-house of a religious society is on condition that the proprietor shall forfeit it to the society if he leaves the meeting-house without first offering it to them for a certain price, it is a breach of the condition if the pewholder, without making such an offer, and without apparent reason or explanation, uninterruptedly and for a long space of time omits to worship in the meeting-house, manifests no intention of returning, and habitually worships with, and apparently has attached himself to, another religious society in the same city.

The holder of a pew in the meeting-house of an incorporated religious society, by a deed upon condition that he should forfeit it to the society by leaving the meeting-house without first offering it to them for a certain price, left the meeting-house without first making the offer, and never made it afterwards. Four years later, the corporation passed a vote declaring the pew forfeited by breach of the condition; and thereafter they excluded him from the meetings of the corporation; and three years after the vote they entered and took possession of the pew, to enforce the forfeiture. But up to the time of their entry they continued to allow him to receive the rent of the pew, and to collect the pew tax from him quarterly; and on the day after the date of the entry they collected from him the tax due on the pew for the quarter next preceding that date. *Held*, that the breach of the condition was continuous, and was not waived; and that the forfeiture was complete.

PETITION, filed September 14, 1867, for a writ of mandamus to the Old South Society in Boston. The petitioner alleged " that the Old South Society in Boston is a corporation duly established under the laws of this Commonwealth, and composed of the proprietors of pews in the Old South meeting-house in said Boston, and that the petitioner is, and has been since February 20, 1856, a duly constituted member of the corporation, having at that date received from the corporation a deed conveying to him a pew in the meeting-house, which deed and pew the petitioner still holds

and owns, together with all rights then acquired by him by virtue of the deed ; that, prior to the annual meeting of the corporation held in April 1867, he had always been fully recognized as a member of the corporation, and allowed to participate as such at all meetings thereof, and had indeed been for several years clerk of the corporation, but at said meeting, being the first held after the decision of this court in the matter of an information of the attorney general against the corporation in relation to a charitable fund known as the Poor Fund of the Old South Church, in which suit the petitioner had been of counsel in support of the information, the corporation by its votes and proceedings refused to allow the petitioner to participate in any way, either by speaking or by voting, in the meeting or in the doings thereof ; that the petitioner has attended three or more meetings of the corporation since said meeting of April 1867, the last of which meetings was held on April 30, 1867, at all of which he has been uniformly and persistently refused the right and privilege both of speaking and of voting ; and that he has always conducted himself, at all meetings of the corporation, with due propriety and decorum, and has not in any way given the corporation any just or sufficient cause or ground for its proceedings regarding him as above set forth ; " wherefore he prayed that the writ might be issued, commanding the corporation to restore him to the full exercise and enjoyment of his rights, privileges and franchises as a member thereof, and not further to deny, interfere with or abridge them.

At a hearing before the chief justice, the question was reserved for the determination of the full court, " whether, taking the allegations in the petition to be true, the petitioner is entitled to this remedy."

*U. H. Crocker*, pro se.

*L. M. Child*, for the respondents.

WELLS, J. Mandamus is a proper remedy to restore to his corporate rights a member of a corporation who has been wrongfully excluded therefrom.

The petition for the writ must show that the corporator has been and is denied the right to exercise or enjoy his corporate

franchises.   It is not sufficient that he has been improperly re-
stricted in the mode of exercising those rights.

The specific acts complained of in this petition may have been
done in execution of a purpose to exclude the petitioner from the
corporation ; they may be evidence of such exclusion ; but they
do not, in and of themselves, constitute exclusion from the corpo-
ration.   They are only acts of restriction in attempts to exercise
certain rights claimed by the petitioner as a member of the cor-
poration.   These acts of restriction are neither alleged to be
wrongful, nor are they so set forth in the petition as to make it
appear that they are necessarily inconsistent with and a denial of
the petitioner's r ght of membership.   There is nothing to show
that they were done otherwise than in the administration of the
internal discipline and government of the corporation, under the
by-laws or rules of its own organization.

Upon the petition as it now stands, the petitioner is not enti-
tled to a writ of mandamus.

After this decision, the petition was amended so as to allege
that the respondent corporation " illegally and without right
passed a vote declaring that the petitioner had forfeited his rights
as a member of said corporation, and that he was no longer a
member thereof ; " that at the meeting at which the vote was
passed, " and at three or more subsequent meetings of the corpo-
ration, the petitioner repeatedly demanded to be recognized as a
member thereof, and as such be allowed to speak and to vote, but
the said corporation has always since the passing of said vote re-
fused, and still refuses, to recognize the petitioner as a member, or
to allow him to exercise and enjoy his corporate franchises as such
member, and wrongfully excludes him therefrom, and illegally
and without right alleges that he has forfeited his rights as such,
and that he is no longer a member of said corporation."

The following facts were then agreed by the parties, and the
case was submitted thereon to the judgment of the full court,
and argued in March 1872 :

" The petitioner, on February 20, 1856, received from the re-
spondent corporation a deed of the pew numbered 60 in the Old

South meeting-house, and thereby became a member of said corporation. By said deed, the said pew was conveyed to him, ' to have, hold and enjoy the same, to him and his legal representatives,' ' upon the condition, that, if the said Crocker or his legal representatives shall leave the said meeting-house, he shall first offer the said pew to the treasurer, for the time being, of said corporation for the sum of seventy dollars ; ' ' but if the said Crocker or his legal representatives, upon his or their leaving the said meeting-house, shall neglect to offer the said pew as aforesaid, then he or they shall forfeit the same to the said corporation.'

" At the date of this deed, and for some years subsequently, the petitioner was in the habit of attending the regular religious services at said church ; but he did not continue such habit for more than four or five years afterwards. In 1861 he purchased a pew in the West Church, and in 1863 was elected an officer, namely, a member of the standing committee, of the corporation composed of the pew proprietors of said West Church.

" In April 1867, the respondent corporation, at a regular meeting, voted that the petitioner had forfeited his pew, and his rights as a corporator, by reason of a breach, as above set forth, of the aforesaid condition in the deed of his pew; and since said meeting the corporation has excluded the petitioner from voting at and from taking part in its meetings.

" For some years previously to said meeting, one Learned (who was the regular agent of the treasurer of the respondent corporation for collecting the pew taxes) had been in the habit of collecting for the petitioner, from the persons occupying his pew, the rent paid by them to him therefor, and of accounting to the petitioner quarterly, at the time of presenting to him for payment the tax bill on his pew, when he deducted the tax from the amount of rent in his hands, and paid the balance to the petitioner, leaving the tax bill receipted in the petitioner's hands. This habit he continued after the date of said meeting, and in this way presented to the petitioner twelve quarterly tax bills for taxes accruing upon the pew subsequently to the date of said vote, the last on April 12, 1870, all of which bills were settled in the above

manner. It is not claimed that these acts of Learned were done without the sanction of the treasurer of the respondent corpora-tion.

"The bill paid April 12, 1870, reads as follows, and the others were similar in form : ' Pew No. 60. To Old South Society in Boston, Dr. To one quarter's tax, ending March 31, 1870, $2.63 Received payment. L. Lothrop, for treasurer.'

"On April 11, 1870, the respondent corporation first entered upon and took possession of the petitioner's pew, and has since held the same, to the exclusion of the petitioner. At the time of the aforesaid meeting of April 1867, nineteen pews in the Old South Church stood, as most of them had done for many years previously, in the names of persons who were not themselves, nor were their representatives, in the habit of attending religious ser-vices at said church ; but no attempt had been made prior to said meeting to enforce the forfeiture of a pew in said church for a breach of the aforesaid condition."

*U. H. Crocker, pro se.* 1. At the former hearing it was de-termined that mandamus is an appropriate remedy to restore the petitioner to his corporate rights, if he has been wrongfully ex-cluded from them. It now appears by the agreed facts, that he has been so excluded, unless his pew has been forfeited by reason of a breach of the condition of his deed.

2. The facts do not show any such breach. The respondents rely upon the decision in *French* v. *Old South Society, ante,* 479, a suit in which, by setting forth as the deed of French a deed in the form of this petitioner's, instead of French's actual deed, they obtained a decision very nearly applicable. But the two cases may nevertheless be distinguished. In French's case, it was agreed that the plaintiff had "left said meeting-house, and ceased to worship with said society, or to attend any of the meetings of said corporation, or to act therein, and connected himself with another religious society in Boston, and from that time ceased to regard himself as a member of said society, or to attend religious worship in said meeting-house." In the present case, besides the want of such an admission of a breach in the exact terms of the condition, there is the fact that the petitioner has continued to

attend the meetings of the corporation, and claimed a right to act therein, and claims to be still a member thereof. Under the rule that a condition is to be construed strictly, it cannot be held that his acts have been sufficient to constitute a breach of the condition. The "leaving" referred to must be a final leaving, without any intent to return, and there is nothing to show it to have been such in this case. The petitioner may have ceased temporarily to attend worship at the Old South Meeting-house for reasons transient in their nature, as from dissatisfaction with a particular pastor. But French admitted a final leaving. Nor is there anything to prevent the petitioner from being connected with two religious societies at the same time. See *Leavitt* v. *Truair*, 13 Pick. 111, 114.

3. The reason for holding the Rev. Sts. *c.* 20, § 4, (Gen. Sts. *c.* 30, § 6,) not to be applicable in *French* v. *Old South Society*, does not apply here, as French's deed was given in 1830, but this petitioner's deed was given after the respondents were incorporated by an act which expressly made them subject to the provisions of that chapter. St. of 1845, *c.* 229.

4. Even if there was a breach of the condition of the petitioner's deed, the respondents have waived it by collecting pew taxes from him for a subsequent time, and after they had knowledge of the acts which constituted it. The case is parallel with that of a lessor who receives rent from his lessee after he has knowledge of acts of the latter rendering the lease liable to forfeiture. The law on this point extends to all cases of conditions; and to all acts of the party entitled to enforce the condition, which are inconsistent with an intent to enforce it. Taylor Landl. & Ten. §§ 287, 412, 497. *Croft* v. *Lumley*, 6 H. L. Cas. 672, 694, 697, 705, 712, 720, 725, 727, 729, 733. *Marsh* v. *Curteys*, Cro. Eliz. 528. *Whitchcot* v. *Fox*, Cro. Jac. 398. *Goodright* v. *Davids*, Cowp. 803. *Guild* v. *Richards*, 16 Gray, 309, 326. *Andrews* v. *Senter*, 32 Maine, 394, 398. *Newman* v. *Rutter*, 8 Watts, 51, 55. *Doe* v. *Rees*, 4 Bing. N. C. 384. *Gomber* v. *Hackett*, 6 Wisc. 323. *Jackson* v. *Allen*, 3 Cowen, 220, 231. *Garnhart* v. *Finney*, 40 Missouri, 449 460.

5. The breach of condition in this case is not a continuing one. If any, it was in the neglect of the petitioner to offer his pew to the treasurer for $70, before he left the meeting-house. After this neglect came to the knowledge of the respondents, as it clearly did before their vote of April 1867, they were bound either to treat the pew as forfeited, or to be deemed forever to have waived the right to enforce a forfeiture for that breach. Six years after its occurrence, they took formal notice of it; and then for three years longer they went on levying pew taxes upon the petitioner, even collecting, on the day after they entered to enforce the forfeiture, a tax for a quarter nine years subsequent to the occurrence of the breach. Though knowing the existence of a breach, they thus continued to collect taxes of the petitioner until they had obtained the decision in French's case, and then they immediately took possession of the petitioner's pew. *Guild* v. *Richards*, 16 Gray, 309, 326.

6. The fact that many pews in the meeting-house had for many years been liable to forfeiture for breach of this condition, and no attempt to enforce such forfeiture had ever been made before this case, tends to confirm the point of a waiver by the respondents. After such a course of conduct, calculated to lull non-attending pew owners into an idea of security, the respondents should not be allowed suddenly to spring upon the petitioner, except according to the strictest letter of the law. It should be considered also, that in an old and wealthy church, which in the lapse of years may become widely separated from the dwellings of its worshippers, many of the pews may naturally pass into the hands of non-attendants; and it would be dangerous to the public welfare if a few pewholders should have power, by a sudden stroke, to declare forfeited all the pews of the unsuspecting non-attendants, and thus concentrate the control of the church and its valuable property into their own hands.

*L. M. Child*, for the respondents. 1. By the facts agreed, it appears that the petitioner left the meeting-house and failed to offer his pew to the treasurer; and thereby he broke the condition of his deed. See *French* v. *Old South Society*, *ante*, 479.

2. In order that his pew should be forfeited under the condition, it was not necessary that the respondents should do anything.

3. The pew having thus been forfeited, there could be no implied waiver. Receiving the pew tax after the forfeiture was not a waiver.

4. The breach by failing to offer the pew to the respondents was a continuing one, and the liability to forfeiture was continuing, and could be enforced at any time, unless the rights of third parties intervened. *Doe* v. *Woodbridge*, 9 B. & C. 376. *Doe* v. *Bancks*, 4 B. & Ald. 401. *Bleecker* v. *Smith*, 13 Wend. 530. *Jackson* v. *Allen*, 3 Cowen, 220.

5. The vote of the pew proprietors, that the petitioner had forfeited his pew, was the beginning of the enforcement of the forfeiture, and was notice to the petitioner.

6. It expelled the petitioner from the corporation; which the proprietors had a right to do, as he had joined another. And hence mandamus will not lie. Moses on Mandamus, 184, 185. If there is any question whether the petitioner was a member of the corporation, the court will not grant the writ.

7. Ever since the respondents took possession of the pew, it is to be assumed that they had a right to exclude him from their meetings, until he establishes a right as a pew proprietor. Hence, if he might have procured his writ at the date of his petition, he cannot do so now, having ceased to be a member of the corporation.

8. The original petition was ordered to be dismissed; and when it was afterwards allowed to be amended, it must stand as if filed at the date of the amendment, which was long after the respondents took possession of the pew.

AMES, J. The respondents are a corporation aggregate, consisting of the owners of the pews in the Old South Meetinghouse in Boston. The ownership of a pew includes and carries with it the right of membership in the corporation. The sale of the pews is a matter which the society has a right to regulate, and it has undertaken to do so by the conditions contained in the title-deeds under which the pews have been conveyed to

their respective owners. *Attorney General* v. *Federal Street Meeting-house Proprietors*, 3 Gray, 47. The petitioner accepted his title upon the condition that, if he should see fit to withdraw from the association, his pew and the right of membership connected with it were not to be considered as mere property which he could sell in the general market to the highest bidder. If he should see fit so to withdraw, he was required, by the terms of his title-deed, to give to the treasurer of the society an opportunity to purchase the pew at a certain prescribed price.

We have already decided that this condition was a lawful and allowable precaution, for the purpose of confining the privileges of membership to persons of the same denomination or religious creed. *French* v. *Old South Society, ante,* 479. The deed, it is true, does not undertake to define what is meant by " leaving the meeting-house ; " but the proper interpretation of that expression may be readily ascertained from the apparent general purpose and character of the instrument. The condition does not apply to a mere temporary or occasional failure to resort to the meeting-house as a place of public worship. In the case last cited, it was held that a pew owner who had ceased to worship with the defendants, or to attend their meetings, and had connected himself with another religious society in Boston, must be regarded as having " left the meeting-house," within the terms of the deed. We think that a pewholder must be said to have left that meeting-house, who, without any apparent reason or explanation, uninterruptedly and for a long space of time has ceased to worship there, has manifested no intention of returning, and habitually worships with, and apparently has attached himself to, another religious society in the same city. If this is not " leaving," within the meaning of the deed, it would be difficult to say what is.

The petitioner insists that, if he " left " at all, it was many years ago ; and that the respondents, by allowing him to receive the rents and collecting taxes from him upon his pew since that time, have waived the forfeiture, if any has ever been incurred. We are of the opinion that this breach of condition on his part was a continuing breach, and that treating him as owner of the pew up to a certain time could not operate as a waiver of any

subsequent breach. If the corporation did not see fit to enforce the forfeiture when the breach of condition first occurred, it gave him an opportunity to purge the forfeiture, by making the tender required by his deed. The breach consisted not merely in leaving, but also in not offering to give up his pew according to the terms of his deed. The corporation, by collecting taxes up to March 31, 1870, has not lost the right to say, at any time since that date, that, having left, he has never made the requisite offer of the pew. His default has continued beyond the latest point of time at which he could claim that there had been a waiver by the respondents. *Doe* v. *Rees*, 4 Bing. N. C. 384. The acceptance of the fulfilment of a condition, at a day later than the stipulated period, is a waiver of all objections on the ground that it was not seasonably performed. *Garnhart* v. *Finney*, 40 Missouri, 449. It is also a waiver of every previous breach. But if the default be renewed or continued, there may be cases in which such continuance or renewal may be treated as a new breach of the condition. *Doe* v. *Woodbridge*, 9 B. & C. 376. *Jackson* v. *Allen*, 3 Cowen, 220. The collection of the tax was, at most, only an implied or presumptive waiver of the antecedent breach of the condition. The failure to offer his pew to the respondents was the substantial and material cause of complaint, and there is no ground for saying that to this they have consented. The delay on their part to enforce their right was a mere postponement, and cannot reasonably be construed as an absolute waiver of it. In *Guild* v. *Richards*, 16 Gray, 309, the condition was broken not by mere inattention or omission to act, but in the doing of acts plainly in violation of its terms, and in such a case an explicit and unmistakable waiver of course w :.ʒ final.

The case finds that on the 11th day of April 1870 the corporation enforced this forfeiture by actual entry upon and taking possession of the pew, and that they have ever since held it to the exclusion of the petitioner. This they had a right to do, and this right was not impaired or lost by the failure to exercise it at an earlier period. The effect of this proceeding has been, that the petitioner has lost his title to the pew, and has ceased to be a member of the society. The order must therefore be

*Petition dismissed.*