STATE, EX REL. LOUIS ROSENFELD, v. HENRY L. EINSTEIN.

1. Private rights against corporations or their officers, depending wholly on contract, will not be enforced by *mandamus.*
2. The proper province of writs of *mandamus* is to enjoin the doing of particular specified acts, and not to constrain a person to regulate his whole course of conduct according to some general principle.
3. When a party prays for a writ of *mandamus* to enforce a claim substantially broader than the right which he succeeds in establishing, the court is justified in refusing him any writ.
4. If there is fair reason to believe that a party asking for an inspection of corporate books intends to make an improper use of them, and on that ground his request is denied, the court will not aid him by *mandamus.*
5. A director in a private corporation prayed for a *mandamus* against his codirector, commanding the latter to permit the former to have at all times an equal share and control with him in the management and direction of all the affairs and business of the company. No interference with the petitioner's right to participate in the board meetings was alleged. The writ was refused on the grounds that the prayer was too general and too broad, and that the writ, if issued, would be practically unenforceable.

On rule to show cause for a *mandamus.*

Argued at June Term, 1884, before Justices KNAPP, DIXON and PARKER.

For the rule, *R. V. Lindabury* and *T. N. McCarter.*

Rosenfeld v. Einstein.

*Contra, John Whitehead* and *Cortlandt Parker.*

The opinion of the court was delivered by

DIXON, J. The relator and the respondent own all the stock of the Bound Brook Woolen Mills, a manufacturing corporation organized in 1880, under our act concerning corporations, approved April 7th, 1875. *Rev., p.* 174. The relator is the secretary, the respondent is the treasurer, and both are directors and each owns one-half of the shares of stock.

In 1881 the shareholders entered into a contract with the corporation that whenever either of them should desire to sell any of its stock, he should first offer the stock to the company at the price at which it might then stand on the company's books, and in case of difference of opinion as to the value of the stock in accordance with such method of determining the same, the shareholder desiring to sell should choose one arbitrator, and the other members of the corporation should choose another, who should settle the question. In January, 1884, the relator and the respondent were unable to agree about the mode in which the value of the corporate property should be estimated and entered upon the books, and after much discussion the relator proposed to leave it to arbitration, pursuant to the contract, but the respondent refused.

This gives rise to the first prayer of the relator, which is for a *mandamus* directing the respondent either to unite with the relator in taking an account of the stock in trade and plant of the company, as of January 1st, 1884, at their cost value, or to allow the relator to have access to the said stock in trade and plant, and to the books and papers of the company, for the purpose of doing it himself.

The claim which the relator thus seeks to enforce is one resting solely upon the private contract between himself and the corporation. Aside from that contract, the relator has not the right which he sets up. Whether an account of the company's property at cost shall be taken or entered upon its books is a matter of mere internal management, which the general law leaves to the discretion of the corporation.

Now, it is well settled that private rights against corporations, dependent wholly upon contract, will not be enforced by *mandamus*. To warrant this writ against private companies or their officers or agents, there must be some specific duty to the relator, expressly imposed by the terms of their charters or necessarily arising from the nature of the privileges or obligations which the charters create. *Moses on Mandamus* 155; *High on Ex. Rem.*, § 25; *State* v. *Paterson, &c., R. R. Co.*, 14 *Vroom* 505. This principle prevents our granting of the relief sought.

The relator also asks for a writ commanding the respondent to allow to him at all times free and unrestricted access to all the books, papers, accounts, mills, offices and other properties of the said company in the respondent's possession or under his control, and to permit the relator to have, at all times, an equal share and control with the respondent in the management and direction of all the affairs and business of the company. It is a serious objection to this prayer that it is so general. A writ of *mandamus* framed in its terms would purport to secure to the relator rights which he could not possibly, in all their breadth, be entitled to. In the nature of things, there must be some times when he cannot be allowed to have unrestricted access to the books, &c., of the company, and there must be some business of the company in which he cannot be permitted to have an equal share. If we should send a writ in the language of this prayer, the respondent could not avoid embarrassment in the most honest efforts to obey it. The proper province of writs of *mandamus* is to enjoin the doing of particular specified acts, and not to constrain a person to regulate his whole course of conduct according to some general principle. The latter, however, seems to be the design which the relator now has in view. The court is justified in refusing any writ when the relator fails to establish a right substantially as extensive as his claim. *High on Ex. Rem.*, § 450; *Rex* v. *Merchant Tailors' Co.*, 2 *B. & Ad.* 115; *King* v. *Free Fishers of Whitstable*, 7 *East* 353; *Crocker* v. *Old South Society*, 106 *Mass.* 489.

But passing by this consideration, let us see whether the evidence discloses title to any writ within the scope of the petition.

The testimony adduced shows that soon after the formation of the company, the relator and respondent arranged between themselves that the latter should bestow his chief attention upon the management of the business in the mill at Bound Brook, and the former should take charge of the company's affairs in New York city, and that checks signed by either individual for the company should be honored in bank; that in 1883 differences arose between these parties touching their business; that early in 1884 they agreed to give up, and did give up, their New York office; that thereafter the relator presented himself at the mill, and formally, in writing, asked the respondent to allow him to " take such part in the management of the affairs of the corporation as his position as *secretary* and *stockholder* entitled him to," to which the respondent replied that there were no duties at the mill for him to perform; that the relator asked the respondent at the mill to permit him to see the company's books, and the respondent refused unless the relator would stipulate not to make entries in them showing the cost value of the company's property as he estimated it; that the respondent kept the books in the safe, the combination lock of which he had set so that the relator could not open it; that the respondent had notified the company's bankers in New York not to honor checks signed by the relator, and had directed the company's selling agents in New York not to give the relator information as to the company's business; that at the last meeting of the company's directors, (who were the relator and respondent alone,) held on March 18th, 1884, one of these gentlemen invariably voted " aye," and the other " nay," on each proposition submitted.

In considering these facts, it must be borne in mind that the relator held three positions in the company : he was stockholder, secretary and director.

I do not perceive that as stockholder he had any legal right upon which these facts at all seem to impinge, unless it be

Rosenfeld v. Einstein.

some right of access to the books.  Undoubtedly, at proper times and for proper purposes, shareholders are entitled to inspect corporate books.  But the testimony does not show that the relator had any occasion for getting possession of the books when he asked for them, unless it was that he might enter in them the estimates about which he and the respondent were disputing.  As the court cannot, by *mandamus*, enforce his claim to make such entries, some other reason for access to the books should appear before we secure it to him,   At least, we should be assured that he would not use our writ to enable him to make entries in the books which perhaps it was wrong to make.  Under all the circumstances, it was not unreasonable for the respondent to insist upon a stipulation against this questionable use  before surrendering the books to the relator's possession.  His doing so was not a denial of the latter's right.  The relator, as shareholder, therefore, fails to show title to the writ.

As secretary, the relator's rights were still narrower.  By the statute, (*Rev., p.* 180, § 18,) it is made his duty to record the votes of the company and directors in a book to be kept for that purpose, and to perform such other duties as may be assigned to him.  It does not appear that any other duties had been assigned to him, or that the book here mentioned was in the safe, or the respondent's attention in any way called to it.  The secretary has also some other statutory duties, but, so far as we can see, they have not been obstructed.

As director, the relator's rights were more considerable.  The statute of incorporation declares (section 16) that the business of the company shall be managed and conducted by the directors thereof, and (section 17) that they shall be not less than three in number.  The authority thus conferred upon the directors, *qua* directors, is to be exercised by them as a board.  Whether the members of the corporation, by reducing the number of the directors to two, have put it out of their power to act legally need not be considered, for in any aspect of the matter the right of the relator in the board has not been denied.  Outside of the board he seems to have had

no authority to act, except such as was derived from the informal arrangement between himself and the respondent, which was practically abrogated when the New York office was closed. This abrogation probably terminated his right to have checks signed by himself honored in bank, but if it did not, and if that right be one enforceable by *mandamus*, a writ against the respondent does not seem to be the appropriate remedy.

No doubt the relator, as director, was entitled to have full information of all the transactions of the company, and a refusal to permit him to inspect the books, &c., would ordinarily be wrongful. But the reasons have already been given for thinking that circumstances excused such refusal in the present case. The respondent's interdict to the company's agent in New York against informing the relator about the company's affairs, was unwarranted; but if the agent is legally bound to communicate with the relator, and not merely with the company itself through the usual channels, the redress now sought seems to be ill-advised. It was the refusal of the agent, not the prohibition of the respondent, that constituted the wrong, and against the agent, (if at all,) the judicial mandate should issue.

Upon the whole, we are unable to discover any specific, clearly legal right, arising from the *status* of the relator towards the corporation, which has been fairly asserted by him and denied or infringed by the respondent, and which a *mandamus* to the latter would enforce. We are consequently of opinion that the rule to show cause must be discharged.

In view of all the circumstances, we are unwilling to award any costs to the respondent.