José Paulino *et al. vs.* The Portuguese Beneficial Association *et als.*

Members of a voluntary association called the "A. B. Association" appointed a committee to procure a charter. On the committee's application the General Assembly created a corporation by the name of the "A. B. Association," the name of the voluntary society, and the corporators organized under the incorporating act.

*Held,* that the members of the voluntary society could not maintain a bill in equity to enjoin the corporators from acting under the charter and from using the corporate name.

The corporate privileges and the corporate name were given by the legislature and could only be taken away by the legislature or by proper proceedings instituted by or in behalf of the State.

Bill in Equity for an injunction.    On demurrer to the bill.

*January* 28, 1893.    Matteson, C. J.    This is a bill by a number of persons, organized as a voluntary association under the name of the Associacão Portugueza de Beneficencia de Rhode Island (Portuguese Beneficial Association of Rhode Island,) against the Portuguese Beneficial Association of Rhode Island, a corporation, and against certain persons who are styled in the bill its pretended president, treasurer and secretary.

The bill sets forth, among other allegations, the organization of the complainants and others under a constitution as a voluntary association; that a committee was appointed to procure a charter for the association; that this committee, which included the respondents, other than the corporation, applied to the General Assembly for and procured an act of incorporation, the names of the corporators being recited;

that the money to procure the act of incorporation was furnished by the complainants to the committee for that purpose and no other; that the corporators named, conspiring to overthrow and subvert the beneficial association "refused to deliver the charter to said association and secretly and fraudulently organized under said charter and fraudulently claimed the property of the voluntary association and pretended that said corporation is the only true and original society."

The bill avers that the charter is the property of the complainants; that the corporators were their agents duly authorized to obtain it for the voluntary association and that the respondent corporation exists in fraud of their rights, as a body distinct, independent and hostile.

The bill prays that the officers of the corporation, its agents and servants, be perpetually enjoined and restrained from doing or transacting any business, or exercising any franchise, right or privilege, under, or by virtue of, the charter, or from using the name of "The Portuguese Beneficial Association" in its business, doings, acts and transactions, or on its seals, signs, banners, flags and advertisements, and that it may be ordered and directed to deliver to the said voluntary association said charter and such property as may be in its possession belonging to said association; that the officers may be enjoined from acting as such, or holding themselves out as such, or from holding any office in the corporation, and may be ordered and directed to deliver to the complainants said charter and such other property belonging to the complainants as may be in their possession, and for general relief.

It will be observed from the foregoing outline that the bill is in effect a bill to annul the charter granted, inasmuch as it seeks to enjoin the respondents, who are the officers of the corporation, from acting under the charter, and to compel them to deliver it to the complainants who would have no authority to organize, or act, under it, since they are not named in it as corporators.

The respondents have demurred to the bill and assign as the first ground of demurrer, that the court has no jurisdiction in this proceeding to grant the relief sought, because it

appears on the face of the bill that the franchise of being a corporation was conferred on the respondents by law; and that having become a legal corporation, the franchise, by the general principles. of law, cannot be avoided, annulled, revoked or forfeited at the suit of private persons, but only by the legislature, or at the suit of the State, or of the attorney general representing the State.

We think that the point is well taken. It was so held in *Rice* v. *National Bank of the Commonwealth,* 126 Mass. 300, 304. And see also, *Folger* v. *Columbian Insurance Co.,* 99 Mass. 267; *Commonwealth* v. *Union Fire and Marine Insurance Co.,* 5 Mass. 230; *Goddard* v. *Smithett,* 3 Gray, 116, 124; Morawetz on Private Corporations, §§ 1013–1015, 1022, 1040.

Nor do we think the bill can be maintained as a bill to enjoin the use of the name of the corporation. The act of incorporation has fixed the name which the corporation is to bear and its right to use that name is part of its franchise conferred on it by law, which can no more be annulled at the suit of private persons than can its franchise to be a corporation. *Boston Rubber Shoe Co.* v. *Boston Rubber Co.,* 149 Mass. 436, 439, 440; indeed, it may well be considered that the enjoining of the use of the name of the corporation given to it by its charter would practically annul its charter, since the only name it has authority to use is the one given by its charter.

The cases cited by the complainants in support of the bill, on this ground, are not in point.

*McGlynn* v. *Post,* 21 Abb. New Cas. 97, was a suit by a voluntary association composed of more than seven members, and which, therefore, by a statute, had the right to sue in its own name, to enjoin a part of its members from *becoming* incorporated, under the general laws of incorporation of New York, as a society under the name of the association. It was held that the injunction should be granted.

*Black Rabbit Association* v. *Munday,* 21 Abb. New Cas. 99, was the reverse of the present case. The dissatisfied members of a voluntary association incorporated themselves under the general laws of incorporation of New York and

attempted to deprive the voluntary association of the right to use its name.   The injunction was denied.

*State* v. *McGrath*, 92 Mo. 355, was an application for a writ of *mandamus* to compel the secretary of state to issue a certificate of incorporation.   The company asking for incorporation had adopted the name of "The Kansas City Real Estate Exchange."   There was already existing in the same city a duly incorporated company, engaged in the same business, under the name of the "Kansas City Real Estate and Stock Exchange."   It was held that the names were substantially the same; the secretary must exercise his discretion in determining whether the company applying for a certificate has adopted a name, which is the same as, or an imitation of, that of an existing corporation, such adoption being prohibited by §§ 762, 926 of the Revised Statutes of Missouri, and that *mandamus* would not be granted to compel him to issue a certificate until it appeared that the law had been complied with by the company, asking incorporation, in the adoption of its name.

*Celluloid Manufacturing Co.* v. *Cellonite Manufacturing Co.*, 32 Federal Reporter, 94, was a bill to protect the name of the complainant on the ground that it was a trade name, and that the name of the defendant had been adopted with a view to deceive the public and to deprive the complainant of its business.   An injunction was withheld at the preliminary hearing, but leave was granted to renew the application, without further argument, at the hearing on the bill.   At the hearing on the bill the respondent made no further defence and the injunction was granted.

It may be that when there are no statutory provisions as to the choice of names the parties organizing a corporation under general laws choose a name at their peril; and that, if they take a name so like that of an existing corporation as to be misleading, and thereby to injure its business, they may be enjoined if there is no language in the statute to the contrary.   *American Order of Scottish Clans* v. *Merrill*, 151 Mass. 558, 562; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manufacturing Co.*, 37 Conn. 278; *Newby* v. *Oregon Central*

*Railway Co.*, Deady 609; *Celluloid Manufacturing Co.* v. *Cellonite Manufacturing Co.*, 32 Federal Reporter, 94, 97. But in the case at bar the name of the respondent corporation was given to it by the act of incorporation and the right to use it is as much a part of the franchise as any other privilege granted. Being conferred by law, it can be taken away only by another act of the legislature, or at the suit of the State.

*Demurrer sustained.*

*George J. West*, for complainants.
*Augustus S. Miller & Arthur L. Brown*, for respondents.