## PRINCE v. McLAUGHLIN.

(Circuit Court of Appeals, First Circuit. December 31, 1926.)

No. 2007.

1. **Appeal and error ⊂⊃324, 397—Citation and severance of defendants are not necessary, where appeal is taken and perfected in open court at the time decree is entered.**

Where an appeal is taken by a defendant, and allowed and perfected in open court at the time the decree is entered, a citation and order of severance for another defendant, not joining in the appeal, is not necessary to give the appellate court jurisdiction.

2. **Appeal and error ⊂⊃327(6)—Defendant disclaiming interest and complying with decree is not necessary party to appeal by another defendant.**

A defendant, who disclaims interest and complies with decree, is not necessary party to appeal by another defendant.

3. **Appeal and error ⊂⊃799—Affidavit that joinder was unnecessary may be considered on motion to dismiss for nonjoinder of parties.**

On motion to dismiss appeal for nonjoinder of parties, court may consider affidavit showing that their joinder was unnecessary.

4. **Corporations ⊂⊃16—Payment for capital stock not condition precedent to existence of corporation (G. L. Mass. c. 156).**

Under G. L. Mass. c. 156, corporation becomes legal entity on issuance of certificate of incorporation by secretary of state, and payment for its capital stock is not a condition precedent.

5. **Corporations ⊂⊃378—One corporation held, on the evidence, not an adjunct or agency of another corporation.**

A corporation which conducted business, and contracted indebtedness in its own name, *held* not a mere adjunct or agency of another on a finding that the latter did not own its capital stock.

6. **Assignments for benefit of creditors ⊂⊃184 —Right of trustees, assignees of stock, to control corporation, cannot be attacked by one having no legal interest.**

The right of trustees to whom the stock of a corporation was assigned, by the holder, to whom it was issued, for the benefit of certain creditors, to exercise the control given them by such transfer, cannot be questioned by one having no legal interest in its business or assets.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit in equity by Edward A. McLaughlin, trustee in bankruptcy of the Great Western Hide Corporation, against Lawrence A. Ford and Leon M. Prince. Decree for complainant, and defendant Prince appeals. Decree vacated and cause remanded, with directions.

Edward O. Proctor, of Boston, Mass. (Sherman L. Whipple, of Boston, Mass., on the brief), for appellant.

Edward A. McLaughlin, Jr., of Boston, Mass. (Nathaniel Thayer, Jr., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a bill in equity brought by McLaughlin, trustee in bankruptcy of the Great Western Hide Corporation, against Lawrence A. Ford and Leon M. Prince individually to set aside as fraudulent an assignment of November 20, 1919, from Biar Crohon to them as trustees for the benefit of the firm of Schmoll Fils & Co. (represented by Prince as their attorney), and the Cass & Daley Shoe Company, a corporation, and Cass & Daley as individuals (represented by Ford as their attorney), and to require them to account for all moneys and properties received by them under said assignment and turn over to the plaintiff all moneys and properties in their possession and control, which they hold or claim to hold by virtue thereof.

In the District Court, the case was sent to a master "to hear the parties and their evidence, and to report to the court his findings of fact and his conclusions thereon, together with such parts of the evidence as any party may, in writing, request."

The master, having heard the parties, filed his report, in which he found many facts and reported such parts of the evidence as was requested, but failed to make some of the essential and more important conclusions of fact.

The case was then heard on the master's report and at the December term, 1925 (December 15, 1925), a decree confirming the report was entered. Thereafter, on December 23, 1925, this decree was revoked, and a decree was entered in which it was adjudged:

"(1) That the report of the special master be and it hereby is confirmed.

"(2) That the defendants Lawrence A.

Ford and Leon M. Prince have no right, title, or interest, legal or equitable, in the shares of the Chevaux Kid Leather Company, or the certificates representing them, or any of them, by virtue of said instrument dated November 19[20], 1919, or otherwise.

"(3) That the defendants Lawrence A. Ford and Leon M. Prince have no right, title, or interest, legal or equitable, either as trustees or otherwise, in any property purporting to be or to have been property of the said Chevaux Kid Leather Company, and received, held, possessed, or controlled by them or either of them, or by their agents and attorneys under and by virtue of said instrument dated November 19[20], 1919, or otherwise.

"(4) That there is now in the hands of defendant Lawrence A. Ford the sum of fifty-eight thousand eight hundred and forty-four dollars and thirty cents ($58,844.30), which is the balance found after a just and true accounting of all property of every name and nature that came into the possession and/or control of said Ford under said assignment of November 19[20], 1919, and/or that has been received, held, possessed, or controlled by him, his agents or attorneys in relation to and growing out of any and all matters comprehended by this cause of action and by the master's report herein confirmed, and that there is no property or assets in the hands of the defendant Leon M. Prince except shares of stock referred to in paragraph 5.

"(5) That the so-called shares of capital stock of the Chevaux Kid Leather Company described in the bill are in the possession of the defendant Leon M. Prince.

"(6) That the defendants and each of them be excused from making any further accounting.

"(7) That the defendant Lawrence A. Ford be ordered to surrender, transfer, and deliver to the plaintiff forthwith said sum of fifty-eight thousand eight hundred and forty-four dollars and thirty cents ($58,844.30) and that such delivery shall operate as a full discharge and release of said Ford from all further liability to any of the parties in this action, including liability for costs.

"(8) That the defendant Leon M. Prince be ordered to surrender, transfer, and deliver to plaintiff forthwith the certificate or certificates purporting to represent two hundred and ninety-eight (298) shares of the capital stock of the Chevaux Kid Leather Company referred to in said instrument dated November 19[20], 1919.

"(9) That the plaintiff recover from the defendants his costs to be taxed by the clerk."

From this decree, Prince, on December 23, 1925, claimed an appeal in the District Court, gave good and sufficient security to answer all costs, and his appeal on that day was allowed.

[1] The plaintiff now moves to dismiss the appeal on the ground that the court is without jurisdiction; that Ford, a necessary party, was not joined as appellant.

The appeal, according to the record, was taken, allowed, and perfected by the giving of security on the day and at the term of the District Court at which the decree was entered, and if the appeal was claimed and allowed in open court (as to which the record is not clear), it was properly taken, and, the case having been duly docketed here, this court would have jurisdiction. King v. Thompson, 110 F. 319 (6th Cir.).

In that case a railway company was the defendant in a suit to foreclose a mortgage on its railroad, in which one Thompson was allowed to intervene and assert a prior lien on its property. From a decree in favor of Thompson, King, and the Mercantile Trust Company, the plaintiffs in the foreclosure proceeding, against whom the decree ran as well as against the railway company, appealed without joining the railway company. It was assumed that the railway company was a necessary party, but inasmuch as the claim of appeal was made and allowed in open court at the time of the entry of the decree, it was held that in such case there is no necessity of issuing a summons and taking an order of severance for a party not joining in the appeal. In its opinion the court said:

"The appeal was taken in open court at the time the decree was entered. The railway company and other parties were presumably present, and bound to take notice thereof. They then had an opportunity to join in the appeal, if they desired to do so, and by refraining they signify their purpose not to appeal. In such case no citation is necessary. The parties are already in court, and the action of the court binds all the parties to the suit. An appeal allowed in this manner binds all the necessary parties to the appeal, without citation or summons and severance. They have constructive notice of the appeal, and may join therein at their election. In this case the receiver's appeal raises all the questions which the railroad company would raise by its separate appeal, and by its silence it signifies a willingness to let his appeal settle the rights of the parties. This was expressly ruled in McNulta v. Com'rs, 99 F. 328, 39 C. C. A. 545, and Rice Co. v. Libbey, 105 F. 825, decided in the Circuit Court of Appeals for the Seventh Circuit, and we are disposed to concur in the conclusions therein reached."

[2] But counsel for the plaintiff here in court

admits that Ford has no further interest in this suit, that at the hearing before the master he disclaimed all interest in the case, and that upon the confirmation of the master's report, having the property or moneys here in question in his possession, he turned the same over to the plaintiff and had the decree so drawn as to protect him from further obligation or liability, as appears in paragraph 7 of the decree. Under these circumstances as complete a severance was brought about as could be desired and as was necessary to authorize Prince to proceed with his appeal. Mercantile Trust Co. v. Kanawha & O. Ry. Co. (C. C. A.) 58 F. 6, 11, 12; Basket v. Hassell, 107 U. S. 602, 608, 2 S. Ct. 415, 417, (27 L. Ed. 500).

The latter case was a bill in equity, filed by Hassell, administrator of Chaney, to which, besides Basket, the Evansville National Bank, Bayard, its president, Reis, its cashier, and Shackelford and Richardson, attorneys for Basket, were defendants. The question was whether a certain fund, represented by a certificate of deposit, issued by the bank to Chaney in his lifetime, belonged to Basket, who had possession of the certificate, and claimed it as a gift from Chaney, or to Hassell, as Chaney's administrator. The final decree ordered the surrender of the certificate to Hassell, and that the bank pay to him the fund. The money was tendered by the bank and the certificate deposited with the clerk. Later Basket took an appeal and perfected it by giving bond for costs. To this appeal Hassell was made a party. Basket's codefendants not having appealed or been cited, Hassell moved to dismiss the appeal on the ground that they were necessary parties. It was there said:

"It is apparent that the sole controversy is between Basket and Hassell, the present parties to the appeal. By the delivery of the certificate of deposit to the clerk the attorneys of Basket are exonerated from all responsibility; and the payment of the money by the bank to Hassell equally relieves it and its officers; for, not being parties to the appeal, and the execution of the decree not having been superseded, the decree will always furnish them protection, whether affirmed or reversed, because, if reversed, it would only be so as between the parties to the appeal. So that the omitted parties have no legal interest, either in maintaining or reversing the decree, and, consequently, are not necessary parties to the appeal. Forgay v. Conrad, 6 How. 203 [12 L. Ed. 404]; Cox v. United States, 6 Pet. 182 [8 L. Ed. 359]; Germain v. Mason, 12 Wall. 261 [20 L. Ed. 392]; Simpson v. Greely, 20 Wall. 152 [22 L. Ed. 338]. The motion to dismiss the appeal is accordingly overruled."

[3] Then again, in addition to the admission of counsel for the plaintiff here in open court, Mr. Ford has filed an affidavit in which he deposes that at the time of the assignment he believed that his clients, the Cass & Daley Shoe Company, or Mr. Cass and Mr. Daley individually, were creditors of Crohon, but it thereafter developed that neither the company nor Cass and Daley individually were such creditors; that he has no interest in the disposition of the assets of Crohon; that he testified before the master in the trial of the case; that he then disclaimed any interest in the Chevaux Kid Leather Company, and now disclaims any interest in those assets; that at the time Prince took his appeal he knew of the same, and abstained from appealing because of his disclaimer, and for the further reason that at the time of the final entry of said decree he had turned over the assets of the Chevaux Kid Leather Company to the plaintiff and had no claim or interest whatever in the funds.

We think we are entitled to receive and consider this affidavit, in connection with the admission of plaintiff's counsel, upon Ford's want of interest in the suit and as disclosing that he is not a necessary party either as appellant or appellee. This is in substance what was done in Newton v. Consolidated Gas Co., 265 U. S. 78, 44 S. Ct. 481, 68 L. Ed. 909. In that case the want of interest of the Public Service Commission of New York—against whom, as well as other defendants, the decree ran in the court below—was shown by the appellants bringing to the attention of the appellate court an act of the Legislature of New York showing that the Public Service Commission had been abolished. There the Public Service Commission had not been made a party to the appeal and no summons or severance had been had. In passing upon the question Chief Justice Taft, writing the opinion of the court, said:

"Upon a petition for rehearing the appellants bring to the knowledge of this court that by chapter 134 of the Laws of 1921, the Public Service Commission for the first district which was here concerned was abolished, and that therefore the appellants were not required by summons and severance to exclude from the future capacity to appeal, a defunct state board originally joined with them as a codefendant. * * * We think the abolition of the Public Service Commission made it unnecessary to make it a party to this appeal and that the dismissal heretofore entered for

lack of service of a summons and severance upon it should be set aside."

The same conclusion was reached by the Circuit Court of Appeals of the Sixth Circuit in Mercantile Trust Co. v. Kanawha & O. R. Co., supra. That was a suit in equity by the trust company against the railway company and others to foreclose a mortgage on property of the railroad. By a decree of foreclosure and sale the railway company had been deprived of everything it had except its franchise to be a corporation. Later a decree was entered declaring receivers' certificates issued by the receiver to the American Express Company in a former suit, a prior lien on the proceeds of the sale. The trust company appealed from the decree without joining the railway company. It was held that the appeal might be prosecuted by the trust company alone; that the railway company, considering its defunct condition, had no interest in reversing the decree in favor of the Adams Express Company as to make it a necessary party to the appeal. It certainly had no direct interest in the proceeds, and the indirect interest—that of reducing its indebtedness—was as immaterial as if the road had passed through bankruptcy. See, also, Winters v. United States, 207 U. S. 564, 574, 28 S. Ct. 207, 52 L. Ed. 340, Richards v. American Bank (C. C. A.) 234 F. 300; and especially F. A. Mfg. Co. v. Hayden & Clemons, Inc., 273 F. 374 (1st Circuit), where the question of the right of this court to receive and consider affidavits on a question of the character here involved is considered and decided.

As we do not regard Mr. Ford as a necessary party to the appeal, we proceed to consider the case on its merits.

The plaintiff's bill proceeds upon the theory that the assets in the hands of the defendants were derived from property of the Great Western Hide Corporation, of which the plaintiff is the trustee in bankruptcy; that they are the proceeds of hides which the Great Western purchased, had tanned into leather, and sold under the name of the Chevaux Kid Leather Company; that the Chevaux Kid Leather Company was not an independent and existing corporation, but a mere tradename under which the Great Western conducted the business of glazed kid or Chevaux kid leather; that, the assets in the hands of the Chevaux Kid Leather Company being the property of the Great Western, the transfer or the attempted transfer of them by Crohon on November 20, 1919, to the defendants was void, as having been made within four months of the filing of the petition in bankruptcy against the Great Western; that, if the Chevaux Kid Leather Company was an independent and existing corporation, it was conceived by Crohon, the general manager of the Great Western, for the purpose of transferring the property of the Great Western to it, and that property of the Great Western was transferred to it in fraud of the creditors of that corporation; and that in either event the decree requiring the defendants to turn over those assets to the plaintiff, should be upheld. The District Court, in entering the decree for the plaintiff, rendered no opinion, and we are therefore without information as to which of the two theories advanced by the plaintiff, if either of them, it adopted in entering the decree. And the master in his report does not find whether the Chevaux Kid Leather Company was or was not an existing corporation, or whether it was a mere trade-name under which the Great Western conducted the Chevaux Kid Leather leather business, or whether the assets in the defendants' hands are the proceeds of property belonging to the Great Western, or that, if it is an existing corporation, that it was incorporated for the purpose of concealing property of the Great Western transferred to it in fraud of the creditors of the Great Western.

[4] An examination of the facts found and evidence reported by the master leads us to the conclusion that a finding in favor of the plaintiff could not reasonably be made on any theory of this case. The evidence warrants the conclusion that, shortly prior to the organization of the Chevaux Kid Leather Company, Crohon, the chief factor in these and various other enterprises, had reached the conclusion that there was a substantial demand in the market for imitation kid leather made from horse hides; that, being desirous of obtaining additional credit for the conduct of that line of business, he determined to organize a corporation and conferred about the the matter with Mr. Barber, of the Salem Trust Company; that at the conference between them it was decided to organize a corporation to be called the Chevaux Kid Leather Company, Barber agreeing to give the proposed corporation a credit not exceeding $100,000, provided it should be organized with a cash capital of not less than $30,000, and should keep a bank account for that sum at the Salem Trust Company; that thereafter, on March 19, 1919, Crohon, Gilman, and Barber associated themselves by a written agreement to form a corporation to be known as the Chevaux Kid Leather Company under the laws of Massachusetts (St. 1903, c. 437,

G. L. c. 156); that on that day the three associates held the first meeting of the subscribers at which they voted to organize the corporation and adopted by-laws; that the subscribers elected a treasurer, a clerk, and three directors; that at that meeting the treasurer declared that the capital stock to the amount of $30,000 had been subscribed, to be paid for in cash; that after adjournment of the subscribers' meeting the directors held their first meeting, elected a president, and directed the officers to complete the organization of the corporation by filing the necessary papers with the commissioner of corporations; that the officers caused the necessary papers to be filed with the commissioner, who on March 19, 1920, approved the articles of agreement and the records; and that on the same day the secretary of state issued a certificate of incorporation, which never has been revoked; that down to the time the certificate of incorporation was issued the capital in the amount of $30,000 had not been paid for in cash, and was not at any time thereafter; that section 12 of the Massachusetts statute above referred to provides that the existence of a corporation organized under general laws shall begin upon the filing of articles of organization in the office of the secretary of state; that the secretary of state shall record the certificate of incorporation which he issues, and that such a certificate, its record, or a certified copy thereof shall be conclusive evidence of the existence of such a corporation; that section 15 of the act provides that stock issued for cash may be paid for in full before it is issued or may be paid for by installments; and that section 16 provides that no stock shall be issued unless the cash, so far as due, has been actually received.

We think it is reasonably clear that under this statute payment for the stock is not a condition precedent to the existence of the corporation; that while, under section 16, the president, treasurer, and directors are made jointly and severally liable to any stockholder of the corporation for damages caused him by the issuance of stock before it is paid for, and while such failure may warrant the state, at the instance of the Attorney General, in taking proceedings for the revocation of the charter, such failure is not a condition precedent to the existence of the corporation. Rice v. National Bank, 126 Mass. 300; Boston Rubber Shoe Co. v. Boston Rubber Co., 149 Mass. 436, 21 N. E. 875; McGinty v. Athol Reservoir Co., 155 Mass. 183, 29 N. E. 510; Old Dominion Copper Co. v. Bigelow, 203 Mass. 159, 181, 89 N. E. 193, 40 L. R. A.

(N. S.) 314; Baker v. Bates-Street Shirt Co. (C. C. A.) 6 F.(2d) 854.

The master labored under the impression that the organizers stated, in the corporate papers filed with the commissioner of corporations and recorded by the secretary of state, that the capital stock in the sum of $30,000 had been paid in cash, and consequently found that the commissioner was misled in approving the articles and the secretary of state was in issuing the certificate. This finding is without foundation, for the papers approved by the commissioner and filed with the secretary of state contained no such statement. After the certificate of incorporation had been issued, the treasurer, at a directors' meeting held on March 27, 1919, made such a statement, as the records of that meeting show; but this statement was not acted on by the above-named officers in approving the papers and issuing the certificate on March 20, 1919.

The Chevaux Kid Leather Company not only had a legal existence, but the master finds facts from which it clearly appears that it carried on business as an independent organization. It made contracts for the purchase of hides, for their manufacture into leather, and for the sale of the leather, borrowed money on acceptances of Barber and Cass and Daley by which it obtained some $125,000; and was generally recognized and dealt with as an independent organization. We think, therefore, that the business and assets of the Chevaux Kid Leather Company cannot be regarded as belonging to the Great Western, on the theory that the name, Chevaux Kid Leather Company, was a mere trade-name under which the Great Western conducted business, for it was not. This being so, the question is whether the Chevaux Kid Leather Company was organized by Crohon for the purpose of defrauding the creditors of the Great Western and its property was fraudulently transferred to the Chevaux Company and may be traced into the hands of the defendants. The master did not find such fraudulent purpose or transfer, and we do not think that on the facts and evidence reported we should so find. The report of the master shows that, at the time and just prior to the organization of the Chevaux Kid Leather Company, Crohon had concluded that the outlook in business for imitation kid leather made from horse hides was good; that to carry on such business he needed credit, which the existing organizations with which he was associated could not obtain; that by organizing the Chevaux Kid Leather Company he could obtain the needed credit, and that this was the

occasion and purpose of its organization; that, having organized the corporation, loans were obtained to the extent of $125,000 on acceptances of the parties above named; that business was conducted by the company some eight months, when creditors of the other companies with which Crohon was connected began to press for settlement of their claims; that during this eight months the Chevaux Kid Leather Company purchased hides, made contracts for their being tanned into leather, sold the leather, and incurred obligations while doing so; that its business was successful, while that of the other organizations was not; that it purchased large quantities of hides from the Great Western as well as from others; that running book accounts between the Great Western and the Chevaux Kid Leather Company were kept by both companies, showing purchases of hides and payments; that the books of the Great Western did not correctly state the accounts between the two companies, either because of the negligence or incompetence of those in charge of its books or because of their fraud; that the books of the Chevaux Kid Leather Company did not accurately state the account, not because of incompetence or bad faith on part of those having charge of the books, but because of entries made upon incorrect information derived from officers of the Great Western. The report also shows that the plaintiff objected to having the account stated by the master, and he excused himself for not stating it on the grounds (1) that, if the court should rule or find that the Chevaux Kid Leather Company was not an existing corporation, but a mere trade-name under which the Great Western was doing business, that it would not be necessary; and (2) that on the evidence then before him he did not think he could properly state the account. He therefore declined to find a balance due one way or the other. There was evidence showing that, during quite a portion of the time this business was being carried on, large sums in the way of checks and funds of the Chevaux Kid Leather Company were appropriated by officers of the Great Western for its benefit. Whether these funds were all accounted for in the accounts kept, the report does not show. But, however this may be, we do not think the facts and evidence reported warrant us in finding that property of the Great Western was turned over to the Chevaux Kid Leather Company in fraud of its creditors, and that it is unimportant, so far as the decision of this case is concerned, which of the corporations owed the other.

[5] Did the Great Western own the stock of the Chevaux Company? We think not. It is hardly probable, on the facts reported, that the whole or any part of the $30,000, the proceeds of the two drafts of the Great Western for $20,000 and $10,000 deposited in the Salem Trust Company to its own account, was ever intended to be applied, or was applied, in payment of the 300 shares of stock of the Chevaux Kid Leather Company. The master did not so find and we do not.

The Great Western not being the owner of the stock, the Chevaux Kid Leather Company cannot be regarded as a mere adjunct or agency of it; and it would be wholly inequitable to do so, for the Chevaux Kid Leather Company has creditors of its own to the number of 60 or 70, whose claims have not been paid, and which were contracted upon its credit. Moreover, it is doubtful if such a view of the law could be entertained, fraud not having been found.

[6] It is further contended that the defendants have no title to the assets of the Chevaux Kid Leather Company; that the instrument of assignment of November 20, 1919, from Crohon to them was without consideration and conveyed no title. But the plaintiff must proceed upon the strength of his title, and not the weakness of the defendants; and as the plaintiff has failed to make out any title to the stock or assets, the defendants' possessory title must prevail. It may, however, not be amiss for us to say that Crohon, having subscribed for the 298 shares of stock in the Chevaux Kid Leather Company and the stock having been issued to him, though not paid for, on November 20, 1919—when he executed the instrument assigning the 298 shares to the defendants for the benefit of their respective clients, with authority to vote the stock in any manner and for any purpose and to do any and all other things in relation to said stock they saw fit, and to exercise their control so as to untangle the affairs of the Chevaux Kid Leather Company and pay the claims of its various creditors—transferred to the defendants all the title and interest any one had in the shares, and the defendants, having taken control and possession of the corporation and its assets under said instrument, they have the right, so far as the evidence discloses, to retain possession, liquidate the claims of the creditors of the Chevaux Kid Leather Company, and hold the balance, if any, for the benefit of the owners of the shares in that company. The defendants having taken possession of the stock and assets, as above stated, Prince did not lose his right

to the possession of them because Ford saw fit to comply with the decree of the District Court requiring him to turn them over to the plaintiff.

The decree of the District Court is vacated, and the case is remanded to that court, with directions to enter a decree dismissing the plaintiff's bill and directing him to deliver the $58,844.30, with any accrued interest now in his hands, to the defendant Prince, with costs to the appellant.

ANDERSON, Circuit Judge. In the general result reached by the presiding judge I concur, the only possible doubt is on the jurisdictional question.

We are faced with a long line of decisions by the Supreme Court and by other Circuit Courts of Appeals, all holding that in the cases of appeals from joint decrees all joint defendants must unite, unless there be a summons and severance or some equivalent proceeding. Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953; Estis v. Trabue, 128 U. S. 225, 9 S. Ct. 58, 32 L. Ed. 437; Mason v. United States, 136 U. S. 581, 10 S. Ct. 1062, 34 L. Ed. 345; Hardee v. Wilson, 146 U. S. 179, 13 S. Ct. 39, 36 L. Ed. 933; Garcia v. Vela, 216 U. S. 598, 30 S. Ct. 439, 54 L. Ed. 632; Lewis v. Sittel (C. C. A.) 165 F. 157; Copland v. Waldron (C. C. A.) 133 F. 217; Babcock v. Norton (C. C. A.) 5 F.(2d) 153; Lamon v. Speer Co. (C. C. A.) 190 F. 734, 735. But this rule, thus broadly stated, leaves open the questions as to what are joint decrees, and what is the equivalent of a formal summons and severance. The rule must be given a sensible and justice-promoting construction; it is not to be applied arbitrarily, or so as to impair or destroy the efficiency of the courts. There are two reasons for requiring severance, as repeatedly stated by the Supreme Court (cf. Hardee v. Wilson, 146 U. S. 179, 181, 13 S. Ct. 39, 36 L. Ed. 933): (1) That the prevailing party may be free to proceed in the enforcement of his judgment against defendants who do not desire it reviewed; (2) that the appellate court shall not be again troubled by the same question on the same record. An analogous general principle is that jurisdiction is not ousted by the absence of a proper, but not indispensable, party. Waterman v. Bank & Trust Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Atwood v. Rhode Island Hospital Trust Co. (C. C. A.) 275 F. 517, 24 A. L. R. 156 et seq., and cases cited. As Ford has no rights to protect or duties to perform, how can he be an indispensable party?

Applying the rule, then, in the light of these underlying principles, I think this court has jurisdiction. It seems to me unnecessary to determine the doubtful question whether the original decree was a joint decree. But, in passing, I note that Ford held the assets of the Chevaux Company, as treasurer, de jure or de facto, of that corporation, having obtained that official position by voting the stock transferred under the assignment of November 20, 1919, to him and Prince, in order to work out a reorganization—a plan found impossible to effect. Prince held the stock. The decree ran against them in severalty as to their respective holdings. It is not plainly a joint decree.

But, whether joint or not, I think the proceedings were the equivalent of a summons and severance, and this without resorting to the affidavit filed in this court. F. A. Mfg. Co. v. Hayden & Clemons (C. C. A.) 273 F. 374, 378, and cases cited. As stated by the Supreme Court in Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953, importance is not to be attached to the technical mode of proceeding called summons and severance. The results, and not the particular method of reaching the results, are the essence of the problem.

That Ford did not take an appeal appears from the docket of this court. The time for appeal long ago expired. There is, therefore, a presumption that, not appealing, he has complied with the decree. It thus appears, of record, that the plaintiff has had the benefit of enforcement against the nonappealing defendant, and also that Ford cannot, by a subsequent appeal, hereafter present to this court the same questions on the same record. Severance, in reality, is thus plainly shown. Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953.

Turning now to the merits, I also concur in the result reached by Judge BINGHAM, but not in all the reasoning leading to that result. For present purposes, it seems to me immaterial whether the Chevaux Company was a corporation de jure or only de facto. It was doing business; it had acquired assets and incurred liabilities. There are 60 or 70 creditors, who (on this record) have valid claims against the assets in liquidation, turned over by Ford to the plaintiff. The plaintiff's rights are limited to recovering assets applicable to the creditors of the Great Western Hide Corporation. The bill was almost certainly demurrable; for it asserts that the Chevaux Kid Company was incorporated and carried on business, and in the fourth and fifth prayers plaintiff seeks to have the court below (as a court of equity, not of bankrupt-

cy) administer the assets of the Chevaux Kid Company, so far as necessary for the benefit of claimants against the kid company. This is not a proper plenary bill to recover assets belonging to the bankrupt's estate. Its main purpose was the disposition of the assets of the Chevaux Company, yet the corporation was not made a party. That it was an indispensable party seems to me indisputable. The pleadings were wrong from the outset. The long trial before the master was futile and apparently all waste.

On the face of the bill, the attempt was to substitute the plaintiff, who, as noted above, was merely trustee in bankruptcy of the Great Western Hide Corporation, for Ford and Prince, who were trustees, primarily, for the benefit of creditors of the Chevaux Company. It is possible that the plaintiff had a right to an accounting for these assets if the bankrupt had a claim to the stock of the Chevaux Company, perhaps on other grounds. We cannot, on this record, say that, after discharging all valid claims against the Chevaux Kid Company, there may not be a surplus applicable to creditors of the Great Western Hide Corporation. But a right to an accounting, and perhaps to recover a possible balance, is radically different from the right to collect assets applicable *only* to creditors having provable claims in bankruptcy against the Great Western Hide Corporation.

The plaintiff made out no title whatever to these assets, in their entirety. The defendants had, in my opinion, more than a possessory title. And Ford's compliance with the decree, when it appeared that his particular client had no interest in the assets, was the practical and probably legal equivalent— under the peculiar circumstances disclosed— of his resigning as trustee and turning the assets in his hands over to Prince. At any rate, I concur in the view that, as the plaintiff has established no valid claim to the assets, the decree should be reversed, and the plaintiff required to pay to Prince the sum of $58,844.-30, together with any interest which may have accrued thereon since this sum came into his possession and costs.

While on this record the exact nature and scope of Prince's duties as trustee are not before us, it may be well to add that nothing in our decision is to be construed as holding that, under the instrument of November 20, 1919, the trustees (or trustee) may prefer one creditor over another in distributing the assets of the Chevaux Company. Of course, if in doubt as to his duty, Prince may seek the instructions of a court of equity.