# Supreme Court of Florida

————

No. SC2024-1098

————

**FLORIDIANS PROTECTING FREEDOM, INC., et al.,**
Petitioners,

vs.

**KATHLEEN C. PASSIDOMO, et al.,**
Respondents.

August 21, 2024

MUÑIZ, C.J.

Before the Court is a petition for a writ of quo warranto. The petition challenges the authority of the Financial Impact Estimating Conference, acting on its own initiative, to issue a revised financial impact statement for a proposed constitutional amendment titled "Amendment to Limit Government Interference with Abortion," which will appear on our state's November 2024 ballot. The petitioners are Floridians Protecting Freedom (the amendment sponsor) and Sara Latshaw (a Florida citizen and taxpayer and the amendment sponsor's chairperson). The respondents are the

Financial Impact Estimating Conference and its four principals, along with the President of the Florida Senate and the Speaker of the Florida House of Representatives, all of whom are named in their official capacities. Although the petitioners criticize the content of the revised financial impact statement, both sides in this case acknowledge that the revised statement's substantive legality is not before the Court; the petition challenges the Estimating Conference's authority to issue that statement.

As we explain, applying traditional principles that govern the issuance of extraordinary writs, we deny the petition. The petitioners actively participated in the Estimating Conference process that they now challenge, without questioning or objecting to the Conference's authority to issue a revised financial impact statement on its own initiative. For that basic reason, the petitioners waived or forfeited any reasonable claim to extraordinary relief from this Court.

I

A

Article XI, section 5(c) of the Florida Constitution requires the Legislature to provide by general law "for the provision of a

statement to the public regarding the probable financial impact of any amendment proposed by initiative." To implement that command, the Legislature has mandated that the ballot for any such proposal include "[a] separate financial impact statement concerning the measure prepared by the Financial Impact Estimating Conference in accordance with s. 100.371(13)." § 101.161(1)(a), Fla. Stat. (2023).[1] The Estimating Conference itself consists of four principals: one person from the Executive Office of the Governor; the coordinator of the Office of Economic and Demographic Research; and one professional staff member from each chamber of the Legislature. § 100.371(13)(c)1., Fla. Stat.

The financial impact statement process begins when the Estimating Conference receives notice of a potential amendment from the Secretary of State. § 100.371(13)(a), Fla. Stat. That starts the clock on a 75-day deadline—subject to tolling while the Legislature is in session—for the Estimating Conference to create the financial impact statement. In no more than 150 words of "clear and unambiguous" text, the statement must disclose "the

---

1. In this opinion, all statutory references are to the 2023 Florida Statutes.

estimated increase or decrease in any revenues or costs to state or local governments and the overall impact to the state budget resulting from the proposed initiative." § 100.371(13), Fla. Stat. Once the Estimating Conference has completed its work, it must "immediately submit the statement to the Attorney General." § 100.371(13)(c)2., Fla. Stat.

The statute that governs the financial impact statement process assumes that our Court will review the legality of the statement by advisory opinion. § 100.371(13)(e), Fla. Stat. But, in *Advisory Opinion to the Attorney General re Raising Florida's Minimum Wage*, 285 So. 3d 1273, 1281 (Fla. 2019), we held that our Court lacks original jurisdiction to review financial impact statements. In so holding, we noted that "[i]t is not clear" whether "the Legislature contemplated that this Court's review authority [would] be exclusive." *Id.* at 1279 n.2 (citing § 100.371(13)(c)2., Fla. Stat.). Yet we "express[ed] no definite opinion" on whether a challenge to a financial impact statement could be brought in a trial court declaratory judgment action. *Id.* at 1279 n.4. To date the Legislature has not amended section 100.371(13) to account for our decision in *Minimum Wage.*

The financial impact statement statute says that, upon finding that a statement is invalid, this Court or "a court" may remand the statement to the Estimating Conference for "redrafting." § 100.371(13)(c)2., (e)1., Fla. Stat.  Outside that situation, the statutory text does not expressly address, one way or the other, the Estimating Conference's authority to redraft a financial impact statement that it has already approved and submitted to the Attorney General.

B

The Estimating Conference received notice of the proposed abortion amendment on September 7, 2023.  Then, on November 16, 2023, it submitted its original financial impact statement to the Attorney General.  That statement said:

> The proposed amendment was analyzed late in the 2023 calendar year.  At that time, litigation was pending before the Florida Supreme Court challenging the Legislature's 2022 enactment of a prohibition on most abortions being performed if the gestational age of the fetus is more than 15 weeks.  If the Court upholds the 2022 law, a 2023 law further reducing the 15 weeks to 6 weeks will take effect 30 days later.  This could lead to additional litigation.  In order to measure the proposed amendment's impact on state and local government revenues and costs, a reasonable expectation of what the state of the law will be at the time of the election is required.  Because there are several possible outcomes

- 5 -

related to this litigation that differ widely in their effects, the impact of the proposed amendment on state and local government revenues and costs, if any, cannot be determined.

On April 1, 2024, our Court issued an advisory opinion approving the abortion amendment for placement on the ballot, *Advisory Op. to Att'y Gen. re Limiting Gov't Interference with Abortion*, 384 So. 3d 122 (Fla. 2024); for the reasons already explained, our opinion did not address the financial impact statement. That same day, we also issued our decision in *Planned Parenthood of Southwest and Central Florida v. State*, 384 So. 3d 67 (Fla. 2024), where we held that the Florida Constitution's Privacy Clause does not guarantee a right to abortion.

Less than a week later, the petitioners filed a circuit court declaratory judgment action alleging that the original financial impact statement contained outdated information and was inaccurate and misleading, in violation of section 100.371(13) and article XI, section 5 of the Florida Constitution. The government defendants sought dismissal of the complaint on jurisdictional grounds but did not defend the original impact statement's substantive validity. On June 10, the circuit court granted

summary judgment in favor of the challengers and remanded the financial impact statement to the Estimating Conference for redrafting. The government immediately appealed that ruling to the First District Court of Appeal and eventually obtained a stay of the circuit court's order pending the appeal.

The same day the circuit court issued its ruling, the Senate President and House Speaker directed that the Estimating Conference be reconvened to review the original financial impact statement and to "mak[e] changes, if any, the conference deems appropriate." The Estimating Conference then held public meetings on July 1, 8, and 15. "Those meetings were voluntary, not pursuant to the circuit court's order." *Fin. Impact Estimating Conf. v. Floridians Protecting Freedom, Inc.*, No. 1D2024-1485, 2024 WL 3491704, at *1 (Fla. 1st DCA July 22, 2024). And the petitioners actively participated in each meeting.

On July 15, the Estimating Conference (over a dissent by one of its members) adopted and submitted to the Attorney General a revised financial impact statement for the abortion amendment. The revised statement reads:

The proposed amendment would result in significantly more abortions and fewer live births per year in Florida. The increase in abortions could be even greater if the amendment invalidates laws requiring parental consent before minors undergo abortions and those ensuring only licensed physicians perform abortions. There is also uncertainty about whether the amendment will require the state to subsidize abortions with public funds. Litigation to resolve those and other uncertainties will result in additional costs to the state government and state courts that will negatively impact the state budget. An increase in abortions may negatively affect the growth of state and local revenues over time. Because the fiscal impact of increased abortions on state and local revenues and costs cannot be estimated with precision, the total impact of the proposed amendment is indeterminate.

The next day, the First District issued an order that acknowledged the Estimating Conference's adoption of a revised financial impact statement and directed the parties to show cause why the still-pending appeal should not be dismissed as moot. The sponsor and the government both maintained that the case was not moot and argued against dismissal. They noted that the issue in the appeal was not the substantive legality of the original financial impact statement but whether a circuit court has the authority to review a financial impact statement at all. The sponsor/appellee pointed out that the appeal was necessary to resolve "whether the circuit court can review the redrafted statement," either in a

continuation of the existing lawsuit or in a new one. The sponsor's response to the First District's show cause order did not say or imply that the Estimating Conference lacked the authority to adopt the revised statement.

The First District rejected the parties' arguments and on July 22 dismissed the appeal as moot. It reasoned that "the order on review is based on a financial impact statement that is no longer operative" and that "[n]o judicial determination or action remains for the circuit court based on the complaint before it." *Fin. Impact Estimating Conf.*, 2024 WL 3491704, at *2. The district court added that, if the challengers wanted to "raise new claims about the revised financial impact statement," "they may do so in a separate proceeding," where the government could contest the justiciability of those claims in the context of "an actual controversy." *Id.*

Two days later, the petitioners sought quo warranto relief from this Court.

II

A

The petitioners argue that the Estimating Conference's "unilateral revision of the Financial Impact Statement violates the

- 9 -

text of section 100.371(13), which contemplates judicial review of Financial Impact Statements and provides for the revision of those Statements only when ordered by a court." They ask us to issue a writ of quo warranto "invalidating the revised Financial Impact Statement for Amendment 4 as unlawful because the Respondents lacked legal authority to adopt it."

The government responds that the petitioners waived or forfeited any objection to the Estimating Conference's authority to voluntarily issue a revised statement and that the Court should therefore exercise its discretion to deny the petition; that the Estimating Conference's voluntary revision of the financial impact statement is permissible under the governing statute, section 100.371(13); that the Court should deny the petition on the basis of the "de facto officer doctrine"; and that the sponsor lacks standing. As to its final argument, the government says that, "[a]lthough there is ample reason to revisit" certain aspects of this Court's quo warranto jurisprudence, "the Court need not do so here."

We are persuaded by the respondents' threshold argument and therefore need not address the others.

- 10 -

B

Our Court's authority to issue a writ of quo warranto derives from article V, section 3(b)(8) of the Florida Constitution. *See W. Flagler Assocs., Ltd. v. DeSantis*, 382 So. 3d 1284 (Fla. 2024) (discussing this Court's quo warranto case law). Quo warranto is an extraordinary writ. *Warren v. DeSantis*, 365 So. 3d 1137, 1142 (Fla. 2023). Such writs "may be denied for numerous and a variety of reasons, some of which may not be based upon the merits of the petition." *Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004). The granting of an extraordinary writ lies within the court's discretion. *Warren*, 365 So. 3d at 1142; *see also State v. City of Eau Gallie*, 126 So. 124, 126 (Fla. 1930) ("A writ of quo warranto is not a writ of right, but a discretionary writ.").

To inform its exercise of that discretion, a court "may and should consider all the circumstances of the case." *City of Winter Haven v. State ex rel. Landis*, 170 So. 100, 108 (Fla. 1936). Relevant circumstances include those which would establish "acquiescence or estoppel as against a private person." *Id.* It is self-evident that "one cannot deliberately acquiesce in the act complained of and then ask a higher court to step in when he later

- 11 -

changes his mind." Alto Adams & George John Miller, *Origins and Current Florida Status of the Extraordinary Writs*, 4 Fla. L. Rev. 421, 459 (1951).

Applying these principles here, we must conclude that the petitioners waived or forfeited their opportunity to seek extraordinary quo warranto relief challenging the Estimating Conference's authority to adopt the revised financial impact statement. The record demonstrates that those who participated in the Estimating Conference's revision process, including the petitioners, understood that the Conference was acting on its own initiative. As explained earlier, the circuit court order invalidating the original financial impact statement was stayed throughout the period when the Estimating Conference reconvened and worked in July. Moreover, the Estimating Conference's clear charge was to exercise discretion in deciding whether revisions to the original financial impact statement were necessary.

Yet the petitioners never questioned the Estimating Conference's authority to voluntarily adopt a revised financial impact statement. Instead, they actively participated in every step of the revision process without objection. They offered oral and

written presentations at each of the Estimating Conference's three July meetings, thoroughly and forcefully advocating their position on what the revised financial impact statement should say. Later, in opposition to dismissal of the appeal then pending in the First District, the petitioners told the district court that the appeal was still necessary to settle whether the circuit court could review "the redrafted statement." In other words, in the First District the petitioners themselves adopted the premise that the revised statement had become the legally operative one (even if, in their view, it was substantively flawed).

These actions preclude the extraordinary relief the petitioners now seek. We hold them to their decision to accept the legality of the Estimating Conference's revision process and instead to focus on influencing the content of the revised financial impact statement. And, as the petitioners themselves acknowledge, the substantive legality of the revised statement is not before the Court in this proceeding.

III

The petitioners waived or forfeited their opportunity to seek extraordinary quo warranto relief challenging the Estimating

- 13 -

Conference's authority to adopt the revised financial impact statement. Therefore, we deny the petition, without addressing its merits and without expressing any views on the substantive legality of the revised statement itself.

No rehearing will be permitted.

It is so ordered.

CANADY, COURIEL, GROSSHANS, and SASSO, JJ., concur.
FRANCIS, J., concurs with an opinion.
LABARGA, J., dissents with an opinion.

FRANCIS, J., concurring.

I fully concur in the majority decision today. I write only to express my continued misgivings with our treatment of writs of quo warranto, *see Worrell v. DeSantis*, 386 So. 3d 867, 872 (Fla. 2024) (Francis, J., concurring in result), and my view that *Whiley v. Scott*, 79 So. 3d 702 (Fla. 2011), stands as, perhaps, the most egregious example of the writ's "drift[] from its common law moorings." *W. Flagler Assocs., Ltd. v. DeSantis*, 382 So. 3d 1284, 1286 (Fla. 2024). Under *Whiley*, we now entertain private-citizen quo warranto petitions simply because the petitioner is a citizen and taxpayer. But prior to *Whiley*, private-citizen standing without statutory authorization was unprecedented. This "high writ"

- 14 -

historically served to guard the State's "sovereignty from invasion or [intrusion]," and no individual could petition for the writ without the consent of the Attorney General (subject to certain statutory exceptions). *State v. Gleason*, 12 Fla. 190, 206 (1868); *see generally* 3 William Blackstone, *Commentaries on the Laws of England* \*262 (defining the English conception of quo warranto as a "writ of right for the king, against [someone] who . . . usurps any office, franchise or liberty" of the Crown). Nevertheless, today is not the day to revisit *Whiley* and its progeny. But we should do so at the earliest opportunity.

LABARGA, J., dissenting.

I dissent to the denial of the quo warranto petition on the grounds of waiver or forfeiture. This Court should decide the legitimate questions about the respondents' authority to reconvene the Estimating Conference and to reconsider and revise the initial financial impact statement. As the majority describes, this case involves an extremely fluid procedural history. In my view, that procedural history placed the petitioners in an impossible position and, as a result, the petitioners should not be precluded from their claim to extraordinary relief.

- 15 -

It is not an overstatement to say that the circumstances of this case are quite convoluted. Even the initial financial impact statement was submitted to the Attorney General and the Secretary of State during a period of legal uncertainty. At that time, in November 2023—in two separate cases—the ballot placement of the proposed "Amendment to Limit Government Interference with Abortion" and the substantive law relating to the right to have an abortion were pending in this Court. Those cases would not be decided for several more months, but a statutory deadline required that the initial financial impact statement be completed anyhow. Not only was there legal uncertainty at the time that the initial financial impact statement was submitted, but also later in the form of (1) legal proceedings relating to the legality of the initial statement, and (2) the reconvening of the Estimating Conference to reconsider and possibly revise the statement. All of these circumstances led to a legal quagmire, one that does not lend itself to today's outcome. This case, involving unique facts, untested legal issues, and a time-sensitive matter of statewide importance, calls for more.

The majority's reasoning exposes the quandary the petitioners were placed in once the Estimating Conference was directed to—and did—reconvene. As the sponsor of the amendment, Floridians Protecting Freedom was entitled to contribute to the process of reconsidering and revising the financial impact statement. Had the petitioners not engaged in the process, they would have lost their opportunity to participate and to potentially influence the finished product. Because they did participate, they are now penalized, and their arguments are deemed waived or forfeited.

But consider if, perhaps in deference to the ongoing legal proceedings in the First District Court of Appeal, the petitioners had remained out of the process and had not "focus[ed] on influencing the content of the revised financial impact statement." Majority op. at 13. Under that scenario, the same quo warranto petition might have been denied today, except on the basis that it was untimely. These are among the reasons that I strongly object to the respondents' characterization of the petitioners' actions as those of intentional delay and gamesmanship.

Further, I take exception with how the majority frames the salient legal issue. The petition is about more than whether the

- 17 -

Estimating Conference could revise the financial impact statement on its own initiative. Framing the question in that way minimizes the surrounding circumstances, namely the actions of the Senate President and the Speaker of the House in their June 10, 2024, letter directing that the Estimating Conference reconvene on July 1, 2024, "for the purpose of reviewing the Financial Impact Statement for the proposed constitutional amendment entitled 'Limiting Government Interference with Abortion,' and making changes, if any, the conference deems appropriate." The majority emphasizes the actions of the Estimating Conference, despite the record evidence of both the June 10, 2024, directive from legislative leadership *and* the Conference's July 15, 2024, submission stating that "[t]he President of the Senate and the Speaker of the House of Representatives *directed that the Financial Impact Estimating Conference reconvene regarding the initiative petition entitled Amendment to Limit Government Interference with Abortion 23-07.*" (Emphasis added.)

Whether, under Florida law, the legislative leadership had the authority to direct that the Estimating Conference reconvene, reconsider the initial financial impact statement, and possibly

- 18 -

revise it, is part and parcel of the quo warranto issue before this Court. That question should not be separated from the question of the authority of the Conference to issue the revised statement.

Finally, today's decision has significant implications beyond the present proposed amendment and related financial impact statement. Despite the majority's focus on the actions of the Estimating Conference, make no mistake that today's decision opens the door to the legislative branch leadership to intervene in the citizen-driven constitutional amendment process—even in the midst of ongoing legal proceedings such as were taking place here.

The quo warranto petition should not be disposed of on the ground that the petitioners waived or forfeited their claims. For these reasons, I respectfully yet strenuously dissent.

Original Proceeding – Quo Warranto

Michelle Morton, Daniel B. Tilley, and Samantha J. Past of ACLU Foundation of Florida, Miami, Florida, and Nicholas L.V. Warren of ACLU Foundation of Florida, Jacksonville, Florida; and Margaret Good of Margaret Good Law, PLLC, Sarasota, Florida,

> for Petitioners, Floridians Protecting Freedom, Inc. and Sara Latshaw

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Daniel William Bell, Chief Deputy Solicitor General, David M. Costello, Deputy Solicitor General, and Myles Sean Lynch,

Assistant Solicitor General, Office of the Attorney General, Tallahassee, Florida; David Axelman, General Counsel, and Hannah Dushane, Deputy General Counsel, The Florida House of Representatives, Tallahassee, Florida; and Carlos Rey, General Counsel, The Florida Senate, Tallahassee, Florida,

for Respondents, Kathleen Passidomo, in her official capacity as President of the Senate, Paul Renner, in his official capacity as Speaker of the House of Representatives, Chris Spencer, Rachel Greszler, Azhar Khan, and Amy Baker, in their official capacities as Principals of the Financial Impact Estimating Conference, and the Financial Impact Estimating Conference